John **MORRIS**, Miles G. Merritt, and Dolores McCall, Plaintiffs,

v.

**NORTHROP GRUMMAN CORPORATION**, Grumman Aerospace Corporation, Andrew Ballow, in his official and individual capacities, Anthony Jessen, in his official and individual capacities, James Gabreski, in his official and individual capacities, Paul Siegel, in his official and individual capacities, William Trillo, in his official and individual capacities, Lillian Dubois, in her official and individual capacities, Defendants.

No. CV 95–3335 ADS.

United States District Court, E.D. New York.

Feb. 17, 1999.

Law Offices of Frederick K. Brewington, NY, Hamburger, Maxson & Yaffe LLP, Melville, NY by David N. Yaffe, of counsel, for plaintiffs.

Morgan, Lewis & Bockius LLP, NY by Christopher A. Parlo, Vincent E. Bauer, Anita W. Coupe, of counsel, for defendants.

### *MEMORANDUM OF DECISION AND ORDER*

SPATT, District Judge.

Approximately three and a half years after the complaint was filed in this case, and after what can only be referred to as a contentious period of discovery including the filing of 251 docket entries, the Court is now prepared to rule on the seven pending motions submitted by the defendants.

On August 14, 1995, John Morris ("Morris"), Miles Merritt ("Merritt"), and Dolores McCall ("McCall") (collectively, the "plaintiffs"), filed their complaint against Northrop Grumman Corporation ("Northrop"), Grumman Aerospace Corporation ("Grumman Aerospace" or "Grumman"), Andrew Ballow ("Ballow"), Anthony Jessen ("Jessen"), James Gabreski ("Gabreski"), Paul Siegel ("Paul Siegel"), William Trillo ("Trillo"), and Lillian Dubois ("Dubois") (collectively, the "defendants").

This lawsuit arises from the plaintiffs' claims of employment discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the New York Human Rights Law (the "Human Rights Law"), N.Y. Exec. Law § 296, and common law. The plaintiffs allege that the defendants "negligently, wantonly, recklessly, knowingly and purposefully ... sought to deprive [them] of employment, position, title and pay through a pattern of discrimination, retaliation, misrepresentation, misinformation, fraud, harassment, character assassination, abuse and manipulation of laws, rules and regulations." (Am. Compl.¶ 2.) The plaintiffs claim that this unlawful activity was undertaken knowingly with the intent to punish, silence, isolate, remove, and retaliate against them in violation of their constitutional, statutory and common law rights.

Presently before the Court are seven separately filed motions by the defendants. First, the defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") ("Rule 12(b)(6)") to dismiss the Title VII claim of the plaintiff Miles G. Merritt's ("Merritt") on the basis that it is time-barred. Second, the defendants move pursuant to Rule 56 of the Fed. R. Civ.P. ("Rule 56") and Local Civil Rule 56.1 ("Local Rule 56") for an Order striking certain portions of affidavits filed in conjunction with the plaintiffs' opposition to the defendants motions

for summary judgment. Third, the defendants move pursuant to Rule 56 for summary judgment dismissing the claims of Merritt. Fourth, the defendants move pursuant to Rule 56 for summary judgment dismissing the claims of Morris. Fifth, the defendants move pursuant to Rule 56 for summary judgment dismissing the claims of McCall. Sixth, the defendants move to strike the economic damage allegations of McCall. And seventh, the defendants move to sever and/or for separate trials pursuant to Rules 20, 21, and 42 of the Fed. R. Civ.P.

## I. BACKGROUND

Many of the facts alleged in the plaintiffs' second amended complaint are outlined in the March 21, 1998 Memorandum of Decision and Order by this Court. While familiarity with the Court's prior opinion is presumed, a brief recitation of the facts alleged by the plaintiffs follows.

All three plaintiffs are African–Americans. Morris and Merritt are male, while McCall is a female. At the time the complaint was filed, the ages of Morris, Merritt, and McCall were 45, 51, and 48, respectively.

The defendant Northrop, is the successor corporation to the Grumman Corporation. The defendant, Grumman Aerospace is a wholly-owned subsidiary of Northrop Grumman. The defendant Ballow, is a Caucasian male employed by both Northrop and Grumman Aerospace as a Director of Material Operations. The defendant Jessen, is a Caucasian male employed by Northrop and Grumman Aerospace as a Director of Material Distribution. The defendant Gabreski, is a Caucasian male employed by Northrop and Grumman Aerospace as a Traffic Manager in the Traffic and Shipping Department of Material Distribution in the Material Operations Division. The defendant Siegel, is a Caucasian male employed by Northrop and Grumman Aerospace as a Director of Business Office Facilities Engineering. The defendant Trillo, is a Caucasian male employed by Northrop and Grumman Aerospace as a Manager in the Facilities Engineering Department. The defendant DuBois, an African–American female is employed by Northrop and Grumman Aerospace as the EEO director in the their EEO office and is responsible for the administration of their equal employment opportunity and affirmative action plans.

### A. Miles Merritt

Merritt was hired by Grumman in August 1962 as a Saw Operator and Warehouseman in the Receiving Stores Department. In 1967, Merritt was promoted to a Staff Assistant in the Receiving and Stores Department. Subsequently, Merritt obtained a Bachelor of Arts degree in Economics and, in 1976, was promoted to the position of Facilities Analyst in the Material Handling Systems Department. Thereafter, Merritt was promoted to the position of Senior Facilities Analyst.

In 1977, Merritt applied for the open position of Manager of Receiving and Warehousing. The position was ultimately given to a Caucasian who Merritt asserts had less education. In 1986, Merritt applied for the open position of Manager of Receiving in the Receiving and Stores Department and participated in the interview process. Although Merritt believed he was eminently qualified for the position, as he claimed to have written most of the Department's procedures, he was not awarded the job. Rather, the position went to the defendant Jessen.

As a result of this incident, Merritt filed a charge of discrimination with the company's Human Resources office. No action was ever taken in response to this charge. According to Merritt, in 1988 or 1989, he was then transferred to the Shipping Department in retaliation for filing the charge.

From 1988 to 1993, Merritt claims to have received "excellent appraisals." During this period, Merritt consistently sought promotions for positions which were ulti-

mately filled, he claims, by less qualified, less senior Caucasian applicants, including employees who were originally trained by Merritt.

In July 1993, Merritt was instructed by the defendant Gabreski to train Jack Schnurr ("Schnurr") so that Schnurr could take over his job duties. Merritt trained Schnurr as instructed, believing that he would be terminated if he failed to comply. In February 1994, Merritt's duties were transferred to Schnurr. Merritt was given "kitting" duties in the Distribution Department which required manual labor. He was allegedly advised that although his job title would remain the same, he might have to take a cut in pay and eventually, his title would be reduced.

On March 20, 1994, Merritt filed a charge of discrimination based on race, color, and age with the EEOC. Sometime in March 1995, Merritt was offered and accepted the position of Subcontract Property Controller. On March 12, 1995, the EEOC issued to Merritt a right to sue letter.

### B. John Morris

Morris was originally hired in January 1978 as a Traffic Analyst in the Traffic Department in the Warehouse and Distribution Directorate of Grumman Aerospace. At that time, he had a Bachelor of Science Degree in Business Administration. In 1980, Morris obtained a diploma from the Academy of Advanced Traffic located in Manhattan. According to Morris, throughout his employment he received numerous compliments regarding his work both from his superiors and from companies doing business with his employer. Despite these accolades, he claims to have been repeatedly denied promotions, and title and skill code changes which would make him eligible for a wider variety of jobs, in favor of younger Caucasian employees with less formal training, education, and seniority.

While Morris asserts that at the time he was hired, he received training in a num-ber of traffic-related fields, he claims that he was consistently denied training in the areas of International Shipping and Household Goods, as well as managerial training. In 1982, Harry Milne ("Milne"), a Caucasian employee who is seven years Morris' junior, received this training and was promoted to the position of Assistant Traffic Manager. Neither Ballow, Jessen, nor Gabreski participated in the selection of Milne. At the time of Milne's promotion, Thomas Lashinsky ("Lashinsky") was the manager of the Traffic Department. Lashinsky supervised both Milne and Morris for the four years prior to the 1982 promotion selection.

Subsequently, Milne decided to leave Grumman and it is alleged that he recommended Morris as his successor. Morris allegedly raised the issue of his promotion with both Robert Byrnes ("Byrnes"), the Director of Warehouse and Distribution overseeing the Traffic Department, and Lashinsky, the Traffic Manager of the Traffic Department. Morris was advised by both that the position would not be filled.

Morris continued to seek educational and departmental training in order to advance his career. Defendant Gabreski, who was hired as a Senior Traffic Analyst in 1982, was promoted to Assistant Traffic Manager in 1988. In 1990, Gabreski was then made Acting Traffic Manager with no posting of the position, an alleged violation of company policy. Prior to receiving these promotions, Morris alleges that Gabreski was given the same training requested by, and intentionally denied to Morris.

After Gabreski's second promotion, Morris again sought the position of Assistant Traffic Manager. Morris spoke with the defendant Jessen, the Director of Material Distribution, who oversees the Traffic Department and is the direct supervisor of the Traffic Manager, and Tom Jones ("Jones"), the Supervisor of the Traffic Department. Jones told Morris to speak

with Gabreski, who in turn allegedly advised Morris that there would be no more promotions, title changes, or skill code changes.

In 1993, Morris spoke with the defendant Ballow, the Director of Material Operations who was Jessen's superior, regarding promotions. The meeting allegedly took place in October 1993. At that meeting, Ballow allegedly informed Morris that the company was not making any more promotions in the Traffic Department. Nevertheless, on or about January 26, 1994, Mike Charpen, a 29 year-old Caucasian male, was promoted to the position of Traffic Supervisor without the position being posted. The official announcement was allegedly made on a day when Morris was absent from work.

Shortly thereafter, Morris spoke with the defendant DuBois, the company's EEO director, and attempted to file a formal discrimination complaint. However, DuBois allegedly refused to accept the complaint and insisted that any such charge be filed with the Human Resources office. In February 1994, Morris filed his complaint with the Human Resources office.

According to Morris, the Human Resources office allegedly investigated the matter and concluded that the Material Operations Management had "acted improperly" in promoting Charpen rather than Morris. It further concluded that the EEO office had also acted improperly. Ballow, Jessen, and Gabreski were then allegedly instructed to rectify the situation. However, rather than promote Morris, the position of Traffic Supervisor was eliminated pursuant to a "reorganization of the Traffic and Shipping Department." Nevertheless, after the position was abolished, Charpen allegedly remained in the same office and performed the same duties.

In April 1994, after his internal complaint was filed, Morris received his first and only negative review in sixteen years. On May 6, 1994, Morris filed discrimination charges based on race, color, and age, with the New York State Human Rights Commission—the charge was also cross-filed with the Equal Employment Opportunity Commission ("EEOC"). On September 26, 1994, Morris was given a 60–day notice of termination. It is alleged that no other employee in the Traffic Department received a similar notice.

On November 21, 1994, Morris was transferred to the Commercial Aircraft Division from which employees were being terminated. It is alleged that no other employee in the Traffic Department was reassigned. Notwithstanding this reassignment, Morris remained in the Traffic Department as a Traffic Analyst with the same duties as he had previously.

On November 28, 1994, Morris received a memorandum rescinding the 60–day notice of September 26, 1994 and a second memorandum terminating his employment as of March 30, 1995. This deadline was later extended to June 30, 1995. On March 27, 1995, the New York Human Rights Commission issued a finding of probable cause as to Morris' discrimination charges.

On June 23, 1995, Morris was advised that the Traffic Department would relocate to Melbourne, Florida in March 1996. As a result, he was told that his employment would be terminated in late 1995, with 60 days notice. Morris was not offered the opportunity to relocate to Florida or to any other position with the defendants. On the other hand, the defendant Gabreski was given the opportunity to relocate. Morris was never actually terminated by Grumman.

On August 2, 1995, the EEOC issued to Morris a right to sue letter. As of the filing of the Amended Complaint, Morris was still employed as a Traffic Analyst.

### C. *Dolores McCall*

McCall was hired by Grumman on July 29, 1969 as a Typist. McCall left Grumman briefly in 1974 for the purpose of

attending college. When McCall returned to Grumman in December 1974, she was given the position of Scheduler, which entailed scheduling jobs in different parts of the company. McCall remained a Scheduler until approximately August 1, 1976 when she was promoted to the position of an Analyst in the Facilities Business Office ("FBO") of the Facilities Engineering Department. Defendant Siegel was the Director of the Facilities Engineering Department from July 1989 through the date of McCall's lay-off on May 5, 1993.

In 1992, McCall began to question her failure to be promoted and to receive salary increases. Although McCall claims to have consistently sought promotions, she asserts that she was repeatedly passed over in favor of younger Caucasian employees with less seniority and less qualifications.

In 1981 the defendants allegedly asked McCall to participate in a rotating job program in the Facilities Engineering Department, in which an individual would choose three business areas and then receive six months training in the selected areas. At the end of the rotation, each participant would choose one field with the guarantee of eventual promotion into that field. McCall agreed to participate. However, although she completed the program, she never received a promotion, and whenever she inquired as to her advancement, she alleges that she was simply told to wait.

In 1983, McCall received a Bachelor of Science degree in Marketing Management. In June 1988, McCall was selected to apply for one of several Building Manager positions. Although McCall was on a list of those selected for the promotion, she, unlike the others on the list, was never actually promoted. McCall allegedly inquired of her superiors, including the defendant Trillo, Manager of the Facilities Engineering Department since 1989, and the defendant Siegel, the Director of the Facilities Engineering Department, as to when she would be promoted. On each occasion, she

was told to wait. According to McCall, Trillo and Siegel eventually responded to her inquiries "with laughter and scorn." McCall never received the promotion.

Since 1989, Trillo also allegedly promised McCall a promotion and a skill code change, based on her "excellent work performance" and her "excellent attendance record." However, McCall never received this promotion or skill code change. From 1989 until the time of her termination, McCall alleges to have received lower salary increases, based on percentage, than each of the other employees in the Facilities Engineering Department. When McCall complained to Trillo and Siegel seeking an explanation and a remedy, they allegedly refused to listen or take any action.

On May 5, 1993, Trillo and Siegel advised McCall that she would be terminated on May 21, 1993. As a result, McCall attempted to file a discrimination charge with DuBois at the company's EEO office. However, it is alleged that DuBois refused to accept the complaint and directed McCall to the company's Human Resources office.

On June 3, 1993, McCall was terminated by Siegel. At the time of her discharge, McCall was 46 years old and had the most seniority in her department. She was also the only African-American employee in her department. No other employee in that department was terminated.

On January 10, 1994, McCall filed a charge of race, color, age, and gender discrimination with the New York State Division of Human Rights (the "DHR") through the Nassau County Commission for Human Rights. The charges were cross-filed with the EEOC. On December 13, 1994, the DHR issued a finding of probable cause. On August 9, 1995, the EEOC issued a right to sue letter to McCall.

### D. Relevant Procedural History

By a Memorandum of Decision and Order dated March 21, 1998, this Court dis-

missed the plaintiff McCall's breach of contract claim as well as the plaintiff Merrit's ADEA claim. The Court, however, denied without prejudice the defendants' motion to dismiss the Title VII claim of Merritt as well as the defendants' motion to sever and/or for separate trials.

## II. DISCUSSION

A. *The Defendants' Motion to Dismiss the Title VII Claim of Plaintiff Merritt*

### 1. *Rule 12(b)(6) Standard*

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The Second Circuit stated that in deciding a Rule 12(b)(6) motion, a court should consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993); *see also International Audiotext Network, Inc. v. AT&T Co.,* 62 F.3d 69, 72 (2d Cir.1995); *Paulemon v. Tobin,* 30 F.3d 307, 308–09 (2d Cir.1994); *Rent Stabilization Ass'n of the City of New York v. Dinkins,* 5 F.3d 591, 593–94 (2d Cir.1993) (citing *Samuels,* 992 F.2d at 15).

It is not the Court's function to weigh the evidence that might be presented at a trial; the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman,* 754 F.2d at 1067, and in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true, *see Leeds v. Meltz,* 85

F.3d 51, 53 (2d Cir.1996); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Leeds,* 85 F.3d at 53; *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1098 (2d Cir. 1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996) (quoting *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6). *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683).

It is within this framework that the Court addresses that the defendants' motion to dismiss.

### 2. *Merritt's Title VII Claim*

The defendants assert that Merritt's Title VII claim should be dismissed for failure to file a timely charge with the EEOC within 180 days of the date of the alleged unlawful discrimination practice. In response, Merritt asserts that due to the Worksharing Agreement between the EEOC and the New York Department of Human Rights ("NYDHR"), his charge

filed with the EEOC was entitled to the benefit of 300 days. Alternatively, Merritt maintains that his Title VII claim should be considered timely filed under the "single filing" rule.

### i. *Dual Filing*

■ There is no issue that when Merritt filed his claim with the EEOC on March 30, 1994, more than 180, but less than 300 days had passed since the last allegation of discrimination. 42 U.S.C. § 2000e–5(e)(1) states, in pertinent part, that:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ..., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ..., such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.

*Id.* (emphasis added). It would appear from the plain meaning of the statute that discrimination claims brought pursuant to Title VII must ordinarily be filed with the EEOC within 180 days of the date on which the "alleged unlawful employment practice occurred," unless the claim was initially filed with a state agency or local agency. *Id.; see also Gomes v. Avco Corp.,* 964 F.2d 1330, 1332–33 (2d Cir.1992) (holding that a Title VII plaintiff must file an EEOC complaint within 180 days of the incident giving rise to the complaint). It is well settled that "[t]he limitations period commences at the time the alleged discrimination decision is made and communicated to the plaintiff." *Smilan v. United Airlines, Inc.,* 796 F.Supp. 723, 726 (E.D.N.Y.1992) (citations omitted).

While there does not appear to be an exception to these rules, Title VII does authorize the EEOC to enter into cooperation agreements with state and local antidiscrimination agencies. *See* 42 U.S.C. § 2000e–8(b); *EEOC v. Commercial Office Prods. Co.,* 486 U.S. 107, 112, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988). In fact, the EEOC has entered into Worksharing Agreements with approximately 81 of the 109 state or local antidiscrimination agencies. Merritt contends that if the alleged discrimination took place in a state or locality that has its own anti-discrimination laws and an agency to enforce those laws, where a Worksharing Agreement is in effect, the time period for filing claims with the EEOC is extended to 300 days, regardless of whether the proceeding was initially instituted with the state agency.

Relying on the plain language of Title VII, this Court, in its prior decision, stated that "the time period for filing claims with the EEOC is extended to 300 days if the proceeding is initially instituted with the state agency." *see also Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998) (holding that "Title VII requires a claimant to file a discrimination charge with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local employment agency, within 300 days of the alleged act of discrimination."). While the Court's statement is technically correct in that the time period for filing claims with the EEOC will undoubtedly extend to 300 days if the claim is first filed with the appropriate state agency, the Court's statement did not specifically address the situation where a Worksharing Agreement is made between the EEOC and an agency such as the NYSDHR that has the authority to address charges of discrimination. The Second Circuit stated in *Ford v. Bernard Fineson Development Center,* 81 F.3d 304 (2d Cir.1996) that:

Worksharing Agreements are much more like government regulations than any sort of contract, since they are agreements between governmental agencies, are authorized by specific statutory provisions, and have been adopted by federal regulations as an integral

part of the regulatory scheme .... As seven circuits have concluded and as we conclude today, the waiver provisions of these inter-agency compacts may determine whether a Title VII claimant is entitled to relief. They therefore have the same impact on claimants as a statute or regulation.

*Id.* at 307 n. 5.

29 C.F.R. 1601.13(a)(3)(iii) provides that, "a [state or local] agency may waive its right to the [60 day] period of exclusive processing of charges provided under [section 2000e–5(c) ] of Title VII with respect to any charge or category of charges." Pursuant to the 1993–94 Worksharing Agreement between the EEOC and the NYSDHR that was in effect at the time Merritt filed his complaint with the EEOC, the NYSDHR agreed to "grant advance waivers of their 60 day exclusive jurisdiction over all Title VII charges including dual filed charges received between 241 and 300 days after the date of the alleged discrimination." 29 C.F.R. § 1601.13(a)(4)(ii) states that where the Worksharing Agreement "over which the [state or local] agency has waived its rights to the period of exclusive processing referred to in [29 C.F.R. 1601.13(a)(3)(iii) ] ... the charge is deemed to be filed with the Commission upon receipt of the document. Such filing is timely if the charge is received within 300 days from the date of the alleged violation." (emphasis added).

Numerous District Courts throughout this Circuit have held that because the NYSDHR has entered into Worksharing Agreements with the EEOC, the limitations period for filing a charge with the EEOC is 300 days after the last alleged unlawful employment practice, regardless of whether the charge was initially filed with the NYSDHR. *See Charlotten v. The May Dep't Stores Co.,* 1998 WL 635547, *2 (S.D.N.Y. Sept.16, 1998) (holding that the 300 day period applies in Title VII cases in the State of New York regardless of whether a claim was initially filed with a state or local agency); *McGuirk v. East-*

*ern General Insurance Agency,* 997 F.Supp. 395, 398 (W.D.N.Y.1998) (holding that the "effect of the Worksharing Agreement [in New York] is to extend the filing period to 300 days"); *Pell v. The Trustees of Columbia University in the City of New York,* 1998 WL 19989, *5 (S.D.N.Y. Jan.21, 1998) (holding that "where there is a state or local agency with the authority to address charges of discrimination, as in New York, the limitations period for filing a charge with the EEOC is 300 days after the last alleged unlawful employment practice occurred."); *Humphrey v. Council of Jewish Federations,* 901 F.Supp. 703, 707 (S.D.N.Y.1995) (holding that "in a state with a state fair employment practices agency (in New York, the NYSDHR), Title VII enlarges that time period for filing with the EEOC to 300 days.")

While the exact number of days between the date Merritt's claim was filed with the EEOC and the last alleged unlawful employment practice is contested, it is undisputed that it was filed after the 180th day, but before the 300th. Due to the fact that at the time Merritt filed his claim, a Worksharing Agreement was in effect between the NYSDHR and the EEOC whereby the NYSDHR waived its rights to the period of exclusive processing, the Court deems Merritt's claim to be timely as it was filed with the EEOC prior to the 300 day limitation. The Court declines to analyze whether the "single filing" rule applies as the Court has determined that Merritt's Title VII claim was filed timely. Therefore, the Court denies the defendants' motion to dismiss Merritt's Title VII claim as time-barred.

**B.** *Defendant's Motion to Strike Portions of Affidavits*

Prior to considering the three separately filed motions for summary judgment, the Court must address the defendants motion to strike the affidavits or portions of the affidavits of Merritt, McCall, Morris, Linda Scarpa ("Scarpa"), Elaine Harris ("Harris"), George Small ("Small"),

James Bessell ("Bessell"), Frank Calderon ("Calderon") and Thomas Jones ("Jones"), and to strike the plaintiffs' response to the defendants' Local Civil Rule 56.1 Statements ("Local Rule 56.1"), formerly Local Civil Rule 3(g).

Local Rule 56.1 states, in pertinent part, that:

(a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.

\* \* \* \* \* \*

(b) The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

\* \* \* \* \* \*

(c) All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

\* \* \* \* \* \*

(d) Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, set forth as required by Federal Rules of Civil Procedure 56(e)

Rule 56(e) of the Federal Rules of Civil Procedure states, in pertinent part, that: [s]upporting and opposing affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence .... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

After filing three separate motions for summary judgment, the plaintiffs submitted a "Response to Defendants' Local Rule 56.1 Statements" as well as the affidavits of Merritt, McCall, Morris, Scarpa, Harris, Small, Bessell, Calderon, and Jones which are the subject of the defendants' motion to strike. The defendants contend that none of the affidavits contain any testimony that relates to the claims of McCall and therefore request that the affidavits not be considered in connection with the defendants' motion for summary judgment concerning her claims. In addition, the defendants claim that the affidavits of Bessell, Calderon, and Jones do not contain information regarding plaintiff Merritt, and thus should not be considered in connection with the defendants' motion for summary judgment on his claims. The defendants further contend that to the extent the affidavits are relevant, they fail to comply with Rule 56(e), and thus should be stricken. Finally, the defendants argue that the plaintiffs' response to the defendants' Local Rule 56.1 Statement should be stricken in its entirety and the facts included in their Statements of Undisputed Facts in Support of their Motion for Summary Judgment on the claims of Merritt, McCall and Morris should be admitted as true.

■ Hearsay statements set forth in an affidavit in opposition to a motion for summary judgment which cannot be categorized as a hearsay exception, conclusory allegations, legal arguments, and statements not based upon personal knowledge, may be stricken. *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) (lack of personal knowledge); *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986) (conclusory allegations and legal arguments); *Caldwell v.*

*The American Basketball Assoc.,* 825 F.Supp. 558, 572 (S.D.N.Y.1993), *aff'd,* 66 F.3d 523 (2d Cir.1995), *cert. denied,* 518 U.S. 1033, 116 S.Ct. 2579, 135 L.Ed.2d 1094 (1996) (hearsay). However, merely because a plaintiff's affidavit conflicts with his deposition testimony does not vitiate the affidavit. "[T]he court may not exclude the affidavit from consideration in the determination of the question whether there is any genuine issue as to any material fact." *Perma Research & Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969) (citation omitted). To the extent that there is some variance between the defendant's Rule 56.1 Statement and the plaintiffs' counter-statement, the facts will be viewed in the light most favorable to the plaintiffs as they are the non-moving parties. However, any facts in the defendant's Rule 56.1 Statement which remain uncontroverted by the plaintiff's papers will be accepted as true. *See Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir.1984). As to conflicting statements in the plaintiffs' affidavit and the deposition testimony, if any, the Court will determine the weight to give to these statements.

The Court's consideration of the papers submitted on the three separate motions for summary judgment will be guided by these principles. However, rather than scrutinizing each line of each of the plaintiffs numerous affidavits and discussing whether they contain conclusory allegations, legal arguments, or hearsay and whether such hearsay may be categorized as a hearsay exception, the Court, in its analysis of the motion for summary judgment, will only consider relevant evidence that is admissible pursuant to the principles enunciated above—including the frame-work established in Rule 56(e) of the Federal Rules of Civil Procedure and Local Rule 56.1.

Therefore, to the extent the defendants seek to strike the affidavits and the "Response to Defendants' Local Rule 56.1 Statement" in their entirety, the motion is denied, with the understanding that in the Court's analysis of the motions for summary judgment it will only consider facts that have been properly set-forth in accordance with the Federal Rules of Civil Procedure as well as the Local Rules.

### C. *Summary judgment standard*

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c) (summary judgment standard). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit, "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.,* 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505; *see Vann v. City of New York,* 72 F.3d 1040 (2d Cir. 1995).

However, mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir.1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.*, 95 F.3d 123 (2d Cir.1996); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The general principles underlying a motion for summary judgment apply no less to this action simply because it is an employment discrimination case. While caution is to be exercised in granting summary judgment where intent and state of mind is in issue, *Gallo, supra,* 22 F.3d at 1224, summary judgment remains available where no genuine issue exists as to a material fact, *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 40 (2d Cir.1994). For a plaintiff in a discrimination case to survive a motion for summary judgment, the plaintiff must offer "concrete particulars" to substantiate the claim. *Meiri v. Dacon*, 759 F.2d 989 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). On the other hand, the Second Circuit has recently stated that "summary judgment may not be granted simply because the Court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50 (2d Cir.1998) ("Danzer") (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

It is within this framework that the Court addresses the three motions for summary judgment at issue.

### 1. Miles Merritt

In two separate Orders dated May 3, 1996 and March 21, 1998 the Court dismissed Merritt's claims for breach of contract, fraud, negligence, intentional infliction of emotional distress, age discrimination, violations of 42 U.S.C. §§ 1981, 1985 and 1986, and violation of the 13th Amendment. The only two claims remaining by Merritt are based upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and New York State Executive Law § 296, *et seq.* (the "New York Human Rights Law"). It is well established that in New York the standard of proof for a Section 296 claim is identical to that under Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 n. 4 (2d Cir. 1995). Therefore, the Court will analyze the claims in tandem unless specifically stated otherwise. Presently before the Court is the defendants' motion for summary judgment seeking an Order dismissing Merritt's two remaining claims.

The defendants contend that all of Merritt's Title VII claims are time-barred. In addition, the defendants' claim that with the exception of an allegation arising from his change of job duties in July 1993, Merritt's claims of discrimination are time-barred under the New York Human Rights Law. With regard to the change of job duties, the defendants argue that Merritt cannot establish a prima facie case of race discrimination, and cannot meet his burden of proving, by a preponderance of the evidence, that the legitimate, non-discriminatory reasons proffered by the defendants for the change in his duties were false or that the adverse employment decision was motivated by Merritt's race.

In support of their contention that all of Merritt's Title VII claims are time-barred, the defendants assert that "as Plaintiff did not file his EEOC Charge until March 30, 1994, any Title VII claim arising out of an action occurring prior to October 1, 1993 (180 days prior to March 30, 1994) is time barred and must be dismissed." As the Court has already determined, due to the Worksharing Agreement between the EEOC and the NYDHR, under Title VII, a plaintiff is permitted to file a discrimination claim with the EEOC within 300 days

from the date of the alleged violation. *See* 42 U.S.C. § 2000e–5(e). Therefore, the Court disagrees with the defendants' contention that any Title VII claim by Merritt arising out of an action occurring prior to October 1, 1993 is time-barred. Merritt had 300 days, not 180 days, in which to file with the EEOC, and the claims are timely.

■ With regard to Merritt's claims under the Human Rights Law, the defendants assert that because the complaint in this action was filed on August 14, 1995, "only actions that occurred subsequent to August 14, 1992 are timely. Thus, the plaintiff may only press his Human Rights Law claim regarding his reassignment to 'kitting' in July of 1993 (see explanation of 'kitting' later in this opinion). All other claims are time-barred." Claims arising under the New York Human Rights Law must be filed within three years of the alleged discriminatory act. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997) (citing *Murphy v. American Home Products*, 58 N.Y.2d 293, 307, 461 N.Y.S.2d 232, 239, 448 N.E.2d 86 (1983)). The plaintiffs' memorandum of law makes no attempt to rebut the defendants' contention that only Merritt's claim regarding his reassignment to "kitting" in July 1993 is viable due to the three year statute of limitations imposed under the New York Human Rights Law. Therefore, the Court grants the defendants' motion dismissing Merritt's New York Human Rights Law claims except for the reassignment to "kitting" in July 1993. As to the Title VII claims that occurred prior to 300 days from the date Merritt filed with the EEOC, the Court finds no equitable grounds to extend the 300 day limitation. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (holding that timely filing with the EEOC is a prerequisite for bringing suit in federal court, although the requirement may be excused on equitable grounds). The plaintiff has not provided any cogent rational reason as to why he should be permitted to file a claim outside the 300 day limitation provided under 28 U.S.C. § 2000e–5(e). Therefore, the only claims that are not time-barred refer to Merritt's change of job duties in 1993.

As the Court has now determined that Merritt's 1993 Title VII and New York State Human Rights Law causes of action are not time-barred, the Court must address whether these claims can survive the defendants' motion for summary judgment under the three-step burden shifting analysis developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

First, Merritt bears the initial burden of proving, by the preponderance of the evidence, a *prima facie* case of discrimination. Second, if Merritt does so, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for Merritt's demotion. Third, should the defendants advance such a reason or reasons, Merritt bears the ultimate burden to prove that the legitimate reasons offered by the employer were merely a pretext for intentional racial discrimination or that racial discrimination more likely motivated the employer's decision. *McDonnell Douglas Corp., supra*, 411 U.S. at 802–03, 93 S.Ct. 1817; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff may satisfy this latter burden either:

(1) directly, by producing evidence that a discriminatory reason more likely motivated the employer; or

(2) indirectly, by showing that the employer's proffered explanation is unworthy of credence, or that intentional discrimination more likely motivated the employer's actions.

*Meiri, supra*, 759 F.2d at 997. However, mere conclusory allegations of discrimination are insufficient to meet this burden. *Id.* at 998.

■ In order to establish a *prima facie* case under the facts of this case (namely,

reduction in position, not discharge), the plaintiff must present evidence that:

(1) he is a member of a protected class;

(2) he was qualified for the position or positions in which he worked;

(3) he was subjected to an adverse employment decision, in this case a reduction in position; and

(4) either the position remained open or he was replaced by someone not a member of his protected class.

*de la Cruz v. N.Y. City Human Resources Administration Dep't of Soc. Serv.*, 82 F.3d 16, 20 (2d Cir.1996). Title VII forbids employment decisions in which the race of the adversely affected employee is a motivating factor. In a case such as the present one, where Merritt's evidence is entirely circumstantial, the pertinent question is whether the plaintiff's *prima facie* case contains evidence sufficient to permit the trier of fact to draw an inference that the prohibited motive was a motivating factor in that it contributed to the adverse employment decision. *See Burger v. New York Institute of Technology*, 94 F.3d 830, 834 (2d Cir.1996). The threshold of evidence that the plaintiff must meet to establish a *prima facie* case is de minimis. *de la Cruz*, 82 F.3d at 20.

Merritt alleges that he was transferred into "kitting" due to his race. In particular, Merritt's claim filed with the EEOC on March 30, 1994 states, in pertinent part that, "Although I still have the same title and pay that I previously had, I believe that this was done because the functions that I am doing now are considered non-essential and I may be easily laid-off .... This was done because of my race ...."

The defendants do not contest that Merritt belongs to a class of protected persons and that he was qualified for the position in which he worked, thus, the first and second elements of Merritt's prima facie case are satisfied. As to the third element of Merritt's prima facie case, the defendants maintain that Merritt's reassignment within the Material Distribution Department to perform kitting duties does not amount to an adverse employment decision. Kitting involves the staging, retrieval and assembly of Air Frame Change kits. Aircraft component parts are received from corporate supply and vendors, staged, put in cartons, and forwarded to packaging for shipment. The kits are then shipped to customers. The Material Distribution department had the responsibility for assembling the kits. Prior to his transfer to the kitting area of Material Operations, Merritt was responsible for ordering shipping supplies. Merritt claims that his transfer was "adverse" as he had to perform manual labor packing cartons in frequent cold temperatures in the "kitting" assignment. On the other hand, the defendants assert that Merritt's transfer was not "adverse" and that, in fact, the person who performed Merritt's former responsibility of ordering shipping supplies, was eventually laid off. In addition, the defendants point out that Merritt remained continuously employed and has not missed a paycheck since his alleged adverse employment transfer. Furthermore, Merrit's salary, title, skill code, vacation eligibility, sick time, leave days, seniority, and benefits remained the same.

Title VII prohibits employers from discriminating with respect to "compensation, terms, conditions, or privileges of employment" on account of an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). In *de la Cruz, supra*, the plaintiff, a caseworker in the Adoption Unit of the New York City Human Resources Administration Department of Social Services, was transferred to the Foster Care Unit. However, the plaintiff retained his civil service rank and he did not suffer a reduction in salary. The plaintiff asserted that the defendant moved him from an "elite" division, which position was prestigious and provided an opportunity for advancement, to a less prestigious unit with little opportunity for professional growth. The defendant argued that the two units were equal in status and there-

fore, did not constitute a legally cognizable adverse action.

Reaffirming that the protections afforded under Title VII are not limited to "instances of discrimination in pecuniary emoluments," the Second Circuit held that the third element of the plaintiff's *prima facie* case was satisfied since the plaintiff's transfer altered the terms and conditions of his employment in a negative way. *de la Cruz*, 82 F.3d at 21. In this case, while Merritt's pecuniary benefits remained the same after his transfer, under the standard enunciated in *de la Cruz*, the Court finds that Merritt has presented sufficient evidence to satisfy the third element of his prima facie case. Merritt was transferred from a position that required little, if any, manual labor, to a position where he had to exercise manual labor under unpleasant conditions. Enduring cold temperatures while packaging crates and preparing them for shipment, in contrast to ordering supplies for shipping in the pleasant environment of an office, in the Court's view, amounts to an adverse employment decision.

■ As to the fourth element of Merritt's prima facie case, Merrit claims that he was replaced by John Schnurr, a white male. Merritt's sole argument in support of his claim that his job responsibilities were taken over by Schnurr is that he trained him. This is not controverted by the defendants. The defendants assert that shipping supply ordering had, by 1993, been reduced to such an extent that it could be reassigned as an additional duty for Schnurr. Furthermore, due to budget restrictions and program cancellations, the Shipping Department's supply function, which Merritt performed, decreased substantially. In fact, the defendants began to use an on-site, integrated supply contractor, Bowman Distribution Company, which left Merritt with only one distributor as compared with more than fifty that he previously had to contend with. Due to the diminished duties and responsibilities of the position, the defen-

dants claim that Merritt's responsibilities were assigned to Schnurr, as just one more duty for an existing employee. In fact, Merritt's job responsibilities occupied only 10% of Schnurr's work day. Thus, the defendants argue that Merritt has failed to demonstrate that his position remained open or that he was replaced by someone not a member of his protected class.

The Court finds that Merritt has not met his burden of establishing, by a preponderance of the evidence, that his position remained open or that he was replaced by someone not a member of his class. Nor did he proffer any evidence that the "reduction" occurred in circumstances raising an inference of racial discrimination. There are no material issues of fact with regard to this element. Merritt has presented no evidence to support his allegation that Schnurr replaced his job other than the fact that he trained him. Nor did Merritt offer any evidence to dispute the defendants assertion that Schnurr was assigned Merritt's former job duties in addition to his own pre-existing duties. As the First Circuit stated in *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994):

> a discharged employee "is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." Rather, "a person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."

*Id.* at 846 (citations omitted) (quoting *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir.), *cert. denied*, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990)).

In sum, the plaintiff does not offer any evidence to create a genuine issue of material fact that Merritt was replaced by someone who was not a member of his protected class. Nor has the plaintiff ad-

vanced any evidence that Merritt's job reassignment occurred in circumstances leading to an inference of racial discrimination. Therefore, as a result of Merritt's failure to prove the fourth element of his prima facie case, the defendants' motion for summary judgment dismissing Merritt's Title VII and New York Human Rights Law claims must be granted.

■ Even if Merritt could prove a *prima facie* case, the Court finds that the defendants have offered legitimate non-discriminatory explanations for Merritt's job transfer that have not been shown by Merritt to be pretextual. Under the applicable law, the plaintiff must counter the defendants' explanations with sufficient evidence to support a rational finding that the nondiscriminatory reasons proffered by the defendant were false or pretextual or that racial discrimination was a motivating factor. *See Van Zant, supra*, 80 F.3d at 714 (grant of summary judgment affirmed where insufficient evidence of pretext existed). Here, the plaintiff failed to provide any evidence that the reasons offered by the defendants were pretextual, or, that racial discrimination was a motivating factor for the adverse employment decision.

In support of their contention that Merritt was transferred due to legitimate, non-discriminatory reasons, the defendants have produced evidence that Grumman was forced to make massive manpower reductions following the cancellation of Grumman's contracts for the production of military aircraft on Long Island, and the shut-down of aircraft programs. Furthermore, the defendants have offered evidence that due to the outsourcing of the supply ordering function to the integrated supply contractor Bowman, and the consolidation and automation in the Shipping Department, Merritt's job of ordering supplies for shipping became dramatically diminished. As such, ordering supplies for shipping was added to Schnurr's already existing job duties and Merritt was re-assigned to do kitting work. It should be noted that Merritt's re-assignment transferred him from an indirect budget position to a more secure direct budget position. In fact, Schnurr, who remained on an indirect budget, was laid off in March of 1996 while Merritt has kept his job with Grumman, and was eventually moved into a position in which he admits that he is now completely happy. The Court finds that the defendants have met their burden of establishing a non-discriminatory reason for transferring Merritt.

At this stage, Merritt bears the burden to prove that the legitimate reasons offered by the defendants were merely a pretext for intentional racial discrimination or that Merritt's race was at least one factor resulting in his job transfer. Merrit can meet this burden directly, by producing evidence that a discriminatory reason more likely motivated the employer; or indirectly, by showing that the employer's proffered explanation is unworthy of credence, and that intentional discrimination actually motivated the employer's actions.

As stated above, the Court finds that Merritt has failed to meet this burden. No material issues of fact exist that rebut the defendants legitimate non-discriminatory reasons for transferring Merritt or that demonstrate any other reason for the transfer. Merritt has not advanced any admissible evidence that creates a genuine issue of material fact with regard to whether the defendants' stated reasons for transferring Merritt were pre-textual. Merritt has failed to demonstrate through admissible evidence that a material issue of fact exists that the defendants' legitimate, non-discriminatory reasons are unworthy of credence or that race discrimination was the more likely motive. Accordingly, the Court finds that for the purpose of the motion for summary judgment, there are no genuine issues of material fact with regard to the non-discriminatory reasons advanced by the defendants in the case of Merritt, or that his race was a motivating factor in the defendants' adverse employment deci-

sions. Therefore, the defendants' motion for summary judgment dismissing Merritt's claims arising under Title VII and the New York Human Rights Law, is granted.

### 2. John Morris

The defendants move pursuant to Rule 56 for summary judgment seeking dismissal of Morris's claims under Title VII, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, ("ADEA"), and the New York Human Rights Law with respect to the alleged denial of promotions in 1982, 1986 and 1990. The basis for the defendants' motion is their contention that Morris's claims are time-barred; that he cannot establish a *prima facie* case of discrimination; and that he cannot rebut the proffered legitimate non-discriminatory reasons for the decisions made by the defendants.

 The defendants contend that Morris' promotional claims are procedurally defective because he failed to satisfy Title VII's prerequisite of first filing such claim with the EEOC. On May 6, 1994, when Morris's filed his claim with the NYSDHR through the Nassau County Commission of Human Rights, he specifically stated that "although I have requested to be considered for promotion into supervisory positions numerous times I have been passed over in favor of white employees who are younger than I am and who have less formal education and seniority than I have." In Title VII cases, a district court only has jurisdiction over those claims included in the EEOC charge or those that are "reasonably related" to the allegations in the plaintiff's EEOC charge. *Butts v. City of New York Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993); *Walsh v. National Westminster Bancorp, Inc.*, 921 F.Supp. 168, 171 (S.D.N.Y.1995). Similarly, under 29 U.S.C. § 626(d), a district court has jurisdiction of claims under ADEA only where the charges have been filed with the EEOC. *See Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1208 (2d Cir.1993). The pur-

pose of the exhaustion requirement is to provide notice to the employer and to encourage conciliation and voluntary compliance. *Butts*, 990 F.2d at 1401; *Dargento v. Bally's Holiday Fitness Centers*, 990 F.Supp. 186, 192 (W.D.N.Y.1997).

In *Butts*, 990 F.2d at 1402–03, the Second Circuit recognized three circumstances which satisfy the reasonable relationship test: (1) conduct within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) conduct that would constitute retaliation for filing a timely EEOC charge; and (3) further incidents of discrimination perpetrated in precisely the same manner as alleged in the EEOC charge.

 It is the first exception that is relevant to the present case. This "loose pleading" exception is based on the recognition that EEOC charges are often filed by complainants without the aid of an attorney, and with the primary purpose of alerting the EEOC to the discrimination claimed by the complainant. *Butts*, 990 F.2d at 1402. Under the standard enunciated above, the relevant inquiry in the present case is whether the EEOC could reasonably be expected to investigate Morris's claim of race and age discrimination, based on the allegations contained in his charge. *See Walsh*, 921 F.Supp. at 172. The Court recognizes, as did the Second Circuit in *Butts*, that the plaintiff was decidedly disadvantaged in filing his EEOC charges because he did not have the benefit of counsel. After considering the charge in the light most favorable to the plaintiff, the Court finds that it is reasonable to conclude that the EEOC charge would prompt an investigation into the alleged discrimination.

As stated above Morris's claim specifically stated that "although I have requested to be considered for promotion into supervisory positions numerous times I have been passed over in favor of white

employees who are younger than I am and who have less formal education and seniority than I have." While the claim goes on to discuss a specific instance of alleged discrimination on January 26, 1994, in the Court's view, the claim was reasonably related to the incidents of 1982, 1986, and 1990. Furthermore, the Court is of the view that Morris's claim provided sufficient notice to his employer to encourage conciliation and voluntary compliance.

■ However, the defendants also contend that the claims arising out of the allege denial of promotions from 1982, 1986, and 1990 are time-barred pursuant to 42 U.S.C. § 2000e–5(e) and N.Y. Exec. Law § 297. As stated above, under Title VII, timely filing with the EEOC is a prerequisite for bringing suit in federal court, although the requirement may be excused on equitable grounds. *Zipes v. Trans World Airlines, Inc., supra.* Under both Title VII and the ADEA, the applicable statute of limitations is 300 days from the filing of a complaint, while under the New York Human Rights Law, the statute of limitations is three years from the alleged discriminatory act. Morris alleges that he was discriminated against by the defendants in 1982, 1986, and 1990. As stated above, Morris filed his claim on April 18, 1994—well after the statute of limitations had expired. However, conduct that occurred more than 300 days before an EEOC filing may be included in a cause of action if it is a continuing pattern of discrimination. *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994).

■ A continuous violation may be established by alleging a "series of related acts, one or more of which fall within the limitations period, or the maintenance of a discriminatory system both before and during the limitations period." *Varrone v. Staten Island Univ. Hosp.,* No. 96–CV–3132, 1996 WL 524390 (E.D.N.Y. Sept.6, 1996) (citing *LaBeach v. Nestle Co., Inc.,* 658 F.Supp. 676 (S.D.N.Y.1987)). In *Johnson v. Nyack Hosp.,* 891 F.Supp. 155, 163 (S.D.N.Y.1995), *aff'd* 86 F.3d 8 (2d Cir.1996), the Court established a three-part test to determine whether the continuing violation exception applies: (1) Does the alleged act involve the same type of discrimination; (2) Have the alleged acts recurred on a regular basis or more in the nature of isolated employment decisions; and (3) Should the plaintiff have been aware at the time of the alleged events that he had a claim that could have been filed at that time.

■ The Court is satisfied that the alleged discriminatory acts are reasonably similar as they all relate to Morris's claim that he was not promoted due to the discrimination of the defendants, so as to satisfy the first prong. With regard to the second prong, the Second Circuit has stated that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Butts v. City of N.Y. Dep't of Housing Preservation and Dev.,* 990 F.2d 1397, 1404 (2d Cir.1993); *see also Quinn v. Green Tree Credit Corp.,* 159 F.3d 759 (2d Cir.1998).

It appears that the alleged discriminatory acts by the defendants against Morris were on a regular basis and cannot be considered to be isolated. The allegations support that Morris was passed over for numerous promotions that were given to white employees. Finally, with regard to whether Morris should have been aware that he could have filed a claim alleging discrimination in 1982, 1986, and 1990, the Court finds that there is sufficient evidence in the record, although controverted, that warrants the Court's conclusion that Morris should be excused from such filing. For example, Morris alleges that he was continuously discouraged by the defendants from lodging a race or age based complaint. Therefore, the Court finds that the claims of discrimination from 1982, 1986, and 1990 are not time-barred.

■ This does not end the Court's analysis of the defendants' motion for sum-

mary judgment as it pertains to Morris. The Court must now consider the merits of Morris's claims under the *McDonnell Douglas* test outlined above. Morris claims that the defendants discriminated against him when they failed to promote him in 1982, 1986, and 1990 and, instead, promoted Milne for the position of Assistant Traffic Manager in 1982, and promoted Gabreski for the position of Assistant Traffic Manager in 1986 and Traffic Manager in 1990. To establish a prima facie case of discrimination in the promotion context, the plaintiff must prove "that [he] applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of discrimination." *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. While the defendants contend that the undisputed facts indicate that the 1982, 1986, and 1990 promotion decisions occurred under circumstances that fail to suggest that age or race was a factor, the Court notes that where the position was filled by someone not a member of the plaintiff's protected class, an inference of discrimination may arise. *de la Cruz*, 82 F.3d at 20; *see also, Gomez v. Pellicone*, 986 F.Supp. 220, 228 (S.D.N.Y.1997). Viewing the evidence in the light most favorable to Morris, the Court is of the view that his prima facie case contains sufficient evidence to permit a trier of fact to draw an inference that he was discriminated on the basis of race when he was denied promotions in 1982, 1986, and 1990.

However, the Court does not find that Morris has established a viable prima facie case of age discrimination under the ADEA. The crux of Morris's claims are based on race, not age. There is not one material issue of fact to support a claim of age discrimination against Morris. His claims of discrimination are clearly based solely on race. Therefore, the Court grants the defendants' motion for summary judgment dismissing Morris's claims of age discrimination.

Finally, as it relates to Morris, the defendants contend that even if he could establish a prima facie case of race discrimination, he failed to rebut the proffered nondiscriminatory reasons for his failure to be promoted. The Court disagrees. While the defendants have proffered evidence that Morris was not promoted due to legitimate business concerns, Morris sufficiently alleges that, as it pertains to him, the proffered reasons may be a pretext. Whether Milne and Gabreski were promoted due to legitimate business concerns as the defendants assert, or due to discriminatory reasons, is ultimately a question for the jury. Therefore, the Court denies the defendants' motion for summary judgment as it pertains to Morris's claims of race discrimination under Title VII and the New York Human Rights Law.

### 3. Dolores McCall

The defendants also move pursuant to Rule 56 for an Order dismissing the Title VII, ADEA, and New York Human Rights Law claims of plaintiff McCall. The defendants argue that McCall's claims arising out of events that occurred in 1981 and 1988 are time-barred. As to McCall's other timely claims, the defendants submit that she cannot establish a prima facie case of discrimination nor can she rebut their proffered non-discriminatory reason for terminating her employment.

On January 10, 1994 McCall filed a discrimination claim with the NYSDHR. McCall's claim alleged that she was hired by Grumman in 1969 as a typist and received several promotions in the early part of her employment. However, McCall asserted that by 1976 her promotions ended and she was never promoted to the position of building manager for which she claims to have been qualified. On June 3, 1993, McCall was laid off. She now claims, race, gender, and age discrimination.

In a similar argument to that made in opposition to Morris's claims, the defendants submit that because McCall filed her claim with the Nassau County Commission

on Human Rights on January 10, 1994, any claims under Title VII or the ADEA that occurred more than 300 days prior to that date are time-barred. In addition, the defendants contend that under the New York Human Rights Law, any claims that occurred more than 3 years prior to January 10, 1994 are time-barred.

■ The Court will not repeat in detail its analysis of the "Continuing Violation Exception." However, to briefly reiterate, a continuous violation may be established by alleging a "series of related acts, one or more of which fall within the limitations period, or the maintenance of a discriminatory system both before and during the limitations period." *Varrone v. Staten Island Univ. Hosp.*, No. 96–CV–3132, 1996 WL 524390 (E.D.N.Y. Sept.6, 1996) (other citations omitted). Again, when considering whether the continuing violation exception applies, the Court will consider (1) whether the alleged act involve the same type of discrimination; (2) whether the alleged acts recurred on a regular basis or more in the nature of isolated employment decisions; and (3) whether the plaintiff should have been aware at the time of the alleged events that she had a claim that could have been filed at that time.

■ The Court has reservations as to whether McCall has met her burden of demonstrating either that the alleged acts involve the same type of discrimination or that the alleged acts recurred on a regular basis. The claims of 1981 and 1988 involve McCall's assertion that the defendants failed to promote her and the claim from 1993 involves a claim of wrongful termination. The Court states again the Second Circuit's finding in *Butts v. City of N.Y. Dep't of Housing Preservation and Dev.*, 990 F.2d 1397, 1404 (2d Cir.1993) that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *see also Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir.1998) (holding that the continuous violation exception is inapplica-ble despite 30 separate incidents of sexual harassment over a six year period). McCall's three isolated acts of discrimination during a twelve year period are not recurring acts on a regular basis. Unlike the claims submitted by Morris, McCall has not demonstrated any link between the 1981, 1988, and the 1993 claims of discrimination. The 1981 and 1988 claims assert a failure to promote claim, while the 1993 claim asserts a wrongful discharge. In addition, the three claims involved different supervisors who had nothing to do with each other during the three different alleged acts of discrimination. As to the third prong, while it is possible that McCall may not have been aware of the possibility of filing a claim for the alleged discriminatory actions of 1981 and 1988 for failing to promote her to the position of building manager, she has failed, as a matter of law, to meet the first two requirements to establish a continuing violation. Therefore, the Court grants the defendants' motion for summary judgment as it relates to McCall's claims arising out of events alleged to have occurred in 1981 and 1988.

With regard to McCall's claim of discrimination due to her termination of June 3, 1993, the Court again relies on the *McDonnell Douglas* burden-shifting test previously stated in this opinion. The defendants contend that McCall cannot establish a prima facie case of discrimination. Alternatively, the defendants argue that even if McCall can establish a prima facie case she cannot rebut the proffered legitimate non-discriminatory reason for her termination or show that her discharge was motivated, at least in part, by gender, race, or age discrimination.

■ It does not appear to be in dispute that at the time McCall was terminated, Grumman was in the process of a reduction-in-force (RIF) due to the decreasing United States defense budget. When determining whether McCall has met her burden of establishing a prima facie case

in a reduction in force case, the Court is guided by the Second Circuit's decision in *Gallo v. Prudential Residential Services, Limited Partnership,* 22 F.3d 1219 (2d Cir.1994).

> When an employer initiates a reduction-in-force, an employee has the initial burden of establishing a prima facie case ... by showing 1) she belongs to the protected age [gender or race] group; 2) she was qualified to assume another position had it been available at the time she was discharged; 3) she was discharged; 4) and that the discharge occurred under circumstances suggesting that age [gender or race] was a factor.

*Id.* at 1224 (Citations Omitted). While *Gallo* specifically addressed a RIF in the context of an age discrimination claim under ADEA, the Court finds that its analysis is equally applicable to claims under Title VII and the New York Human Rights Law for the reasons set forth above.

It is undisputed that McCall was a member of a protected class and that she was discharged. Therefore, the only issues for the Court's consideration are whether she was qualified to assume another position had it been available at the time she was discharged and whether the discharge occurred under circumstances suggesting that age, gender, or race was a factor.

 The Court finds that material issues of fact exist as to whether McCall was qualified to assume another position and whether McCall was discharged due to her race. However, the Court determines that McCall has not raised material issues of fact with regard to her claims of age and gender discrimination. The defendants terminated McCall rather than other employees who were in the same department. On the date McCall's RIF paperwork was completed, she was listed on the Termination Review Report and on a Position Rank Order Form as being third of the three remaining analysts in her department. This ranking was consistent with her prior positional rankings where she was ranked third of three analysts in the Business Office in February 1993 and, overall eleventh of the twelve individuals in Facilities Maintenance. This ranking was also consistent with her prior departmental rankings in 1992 wherein she ranked sixth of six individuals in her skill code and fifteenth of twenty overall.

Whether McCall's performance appraisals were justified and whether she was less qualified than the other employees in her department who were not terminated is a question of material fact that must be determined by the jury. The Court notes that one of the persons who was not terminated was a women, thus undermining her claim of gender discrimination. In addition, other than the fact that McCall asserts that she was older than the people who were not terminated, McCall does not provide any other evidence in support of her claim of age discrimination under the ADEA. *Norton v. Sam's Club,* 145 F.3d 114, 120 (2d Cir.1998) (holding that "a jury cannot infer discrimination from thin air.") *See also DaCunha v. Globo Int'l. Ltd.,* 1999 WL 38177 (S.D.N.Y. January 28, 1999). Therefore, the Court grants the defendants' motion for summary judgment as it pertains to McCall's claims of discrimination under the ADEA and for gender discrimination under Title VII and the New York Human Rights Law.

While the Court believes that the defendants have presented a legitimate nondiscriminatory reason for McCall's termination, namely, a reduction-in-force, the Court is of the view that material issues of fact do exist as to whether the reason was pre-textual and whether McCall's dismissal was in some part motivated by racial discrimination. Prior to McCall's termination, she claims to have had the most seniority in her department; that she was the only African–American woman in her department; and that she was the only person terminated. Admittedly, McCall relies upon circumstantial proof to support her claim of discrimination. However, rarely will a plaintiff. in a discrimination

case have direct evidence proving discrimination on the part of the employer. In *Rosen v. Thornburgh,* 928 F.3d 528, 533 (2d Cir.1991) the Second Circuit recognized that "employment discrimination is often accomplished by discreet manipulations and hidden under a veil of self-declared innocence. An employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent." *Id.* Therefore, the Court denies the defendants' motion for summary judgment seeking dismissal of McCall's claims of racial discrimination under Title VII and the New York Human Rights Law, stemming from her termination of June 3, 1993.

With regard to McCall, the defendants also seek an Order striking her economic damage claims due to her alleged failure to mitigate. In particular, the defendants assert that McCall refused to explore two job openings and declined an offer to be reinstated to a substantially similar job. While this alleged failure to mitigate may be pressed by the defendants at the trial, at this juncture there cannot be a determination, as a matter of law, to preclude McCall's economic benefits prior to trial. Accordingly, the Court denies the defendants' motion to strike McCall's economic damage claims.

### D. *The Defendants' Motion to Sever and/or for Separate Trials*

The defendants move to sever and/or for separate trials pursuant to Rules 20, 21, and 42 of the Federal Rules of Civil Procedure, contending that the plaintiffs' claims do not arise out of the same transaction or occurrence; the respective claims do not involve common questions of law or fact; that the McCall case includes a claim that she failed to mitigate her damages; and that the defendants will otherwise suffer undue prejudice and additional expenses.

Rule 21 of the Fed.R.Civ.P. ("Rule 21") states, in pertinent part, that "[a]ny claim against a party may be severed and proceeded with separately." Rule 42(b) of the Fed.R.Civ.P. ("Rule 42") states, in pertinent part, that "[t]he Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . ." It is important to distinguish between severance that occurs under Rule 21 and separate trials that occur under Rule 42. "Separate trials usually will result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently." 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2387.

The Court's determination as to whether it should sever the claims of the plaintiffs under Rule 21 or whether it should order separate trials under Rule 42 requires the same considerations. *Fong v. Rego Park Nursing Home,* 1996 WL 468660, \*1 (E.D.N.Y. Aug.7, 1996); *German v. Federal Home Loan Mortgage Corp.,* 896 F.Supp. 1385, 1400 (S.D.N.Y. 1995); *Sutton Hill Associates v. Landes,* 1988 WL 56710, \*2 (S.D.N.Y. May 25, 1988). While issues under Rule 21 or Rule 42 are within the broad discretion of the trial court, *New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065 (2d Cir.), *cert. denied,* 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988), the Court will consider the following factors in making such a decision: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

As the Court has now had the opportunity to rule on the defendants motions for summary judgment, the only remaining claims are: (1) in the Morris case

the 1982, 1986, 1990, and 1994 claims of race discrimination under Title VII and the New York Human Rights Law, and (2) in the McCall case the 1993 claim of race discrimination under Title VII and the New York Human Rights Law. The Court is of the view that the governing factors outlined above warrant separate trials on the Morris and McCall claims.

Morris's claims involve claims of failure to promote, while McCall's claim involves a claim of unlawful termination in the context of a RIF. In addition, a trial on the race discrimination claims of Morris and McCall will produce separate documentary evidence and the testimony of different witnesses. In fact, there is no evidence that the Morris and McCall claims are related in any respect other than the fact that they worked for the same company and they are both based on race discrimination. In addition, Morris and McCall were in separate departments and had different supervisors that were responsible for making the decisions that are now the crux of this litigation.

Also, it should be noted that there is a real possibility that the defendants would be prejudiced if the Court did not order separate trials of Morris and McCall. Morris's claims of race discrimination that allegedly begin in 1982 and end in 1994 are apparently more serious than the isolated claim of race discrimination by McCall in 1993. The potential inferences or conclusions that the jury may draw from the different claims and the strength of the respective cases could unfairly prejudice the defendants, and perhaps one of the plaintiffs. Therefore, the Court finds that the circumstances, facts, and legal issues surrounding the separate claims of Morris and McCall warrant separate trials.

## III. CONCLUSION

Having reviewed the parties' submissions and heard oral argument, and for the reasons set forth above, it is hereby

**ORDERED,** that the defendants' motion pursuant to Rule 12(b)(6) of the Fed-

eral Rules of Civil Procedure to dismiss the plaintiff Miles Merritt's Title VII claim on the basis that it is time-barred is **DE-NIED;** and it is further

**ORDERED,** that the defendants' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 to strike the plaintiffs affidavits and response to defendants Local Rule 56.1 Statement is **DENIED** to the extent detailed in the Court's opinion; and it is further

**ORDERED,** that the defendants' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure to dismiss the plaintiff Miles G. Merrit's Title VII and New York Human Rights Law claims is **GRANTED;** and it is further

**ORDERED,** that the defendants' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure to dismiss the plaintiff John Morris's ADEA claims arising from 1982, 1986, and 1990 is **GRANT-ED;** and it is further

**ORDERED,** that the defendants' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure to dismiss the plaintiff John Morris's Title VII and New York Human Rights Law claims of racial discrimination from 1982, 1986, and 1990 is **DENIED;** and it is further

**ORDERED,** that the defendants' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure to dismiss the plaintiff Dolores McCall's 1981 and 1988 claims as time-barred is **GRANTED;** and it is further

**ORDERED,** that the defendants' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure to dismiss the plaintiff Dolores McCall's claims of age and gender discrimination, under Title VII, the ADEA, and the New York Human Rights Law, resulting from her termination on June 3, 1993 is **GRANTED;** and it is further

**ORDERED,** that the defendants' motion pursuant to Rule 56 of the Federal

Rules of Civil Procedure to dismiss the plaintiff Dolores McCall's claims of race discrimination under Title VII and the New York Human Rights Law, resulting from her termination on June 3, 1993 is **DENIED;** and it is further

**ORDERED,** that the defendants' motion seeking an order striking McCall's economic damage claim due to her alleged refusal to mitigate, is **DENIED;** and it is further

**ORDERED,** that the defendants' motion to sever and/or for separate trials pursuant to Rules 20, 21, and 42 of the Federal Rules of Civil Procedure, is **GRANTED,** in that the Court Orders that the plaintiffs Morris and McCall will receive separate trials against the defendants; and it is further

**ORDERED,** that all other requests by the defendants in their seven separately filed motions, including requests for attorneys fees and costs are **DENIED;** and it is further

**ORDERED,** that the caption of the case shall now read

JOHN MORRIS and DOLORES McCALL, Plaintiffs,

against

NORTHROP GRUMMAN CORPORATION, GRUMMAN AEROSPACE CORPORATION, ANDREW BALLOW, in his official and individual capacities, ANTHONY JESSEN, in his official and individual capacities, JAMES GABRESKI, in his official and individual capacities, PAUL SIEGEL, in his official and individual capacities, WILLIAM TRILLO, in his official and individual capacities, LILLIAN DUBOIS, in her official and individual capacities, Defendants.

and it is further

**ORDERED,** that the separate trial of the case of the plaintiff Morris is set down for jury selection on March 1, 1999 at 9:00 AM; and it is further

**ORDERED,** that the separate trial of the case of the plaintiff McCall is set down for jury selection on March 29, 1999 at 9:00 AM.

**SO ORDERED.**