Diane M. PURICELLI and Charles E. Hughes, Plaintiffs,

v.

CNA INSURANCE COMPANY, Defendants.

Civ. No. 98–CV–0359.

United States District Court, N.D. New York.

April 14, 1999.

140

Lombardi, Reinhard Law Firm (Paul E. Davenport, of counsel), Albany, NY, for plaintiffs.

Fox, Grove Law Firm (Steven L. Gillman, of counsel), Chicago, IL, for defendant.

### MEMORANDUM–DECISION AND ORDER

SMITH, United States Magistrate Judge.

Plaintiffs, Diane Puricelli and Charles Hughes, jointly filed suit against their former employer, defendant CNA, seeking relief for alleged violations of the Age Discrimination in Employment Act of 1967 (ADEA), the New York State Human Rights Law, and intentional infliction of emotional distress. Defendant now moves this court pursuant to Fed.R.Civ.P. 20(a) and 21 to sever the claims of plaintiffs Puricelli and Hughes on the ground that the claims are misjoined because they neither arise out of the same transaction or occurrence or present common questions of law or fact. In the alternative, defendant seeks relief under Fed.R.Civ.P. 42(b) in the form of separate trials. In order to determine whether plaintiffs' claims meet the per-

missive joinder requirements of Fed.R.Civ.P. 20(a), a complete factual review is necessary.

### A. Plaintiff Puricelli

Plaintiff Puricelli was employed by Continental Insurance Company in Glens Falls, New York, from March 1986 through May 1995. Continental was taken over by defendant CNA in May 1995. Following the takeover, Puricelli continued her employment and held the position of litigation supervisor until July 1996, when she was allegedly demoted to bodily injury adjuster. Puricelli worked in that capacity until December 27, 1996, the date of her alleged termination. Puricelli then alleges that defendant embarked on a campaign to remove older employees from the claims department, involving disparaging remarks and harassment related to Puricelli's age, which culminated in her discharge on an allegedly pretextual ground and replacement by a younger employee.

Shortly after the takeover in June 1995, Puricelli was given a performance evaluation by Kevin Romer, to whom she reported, and received a rating of "3" (performance meets expectations). Following the review, Romer counseled Puricelli on the specific areas of her performance that needed improvement. In June 1996, Puricelli was placed on a 30–day probationary action plan designed to correct those performance problems. By the end of the third week of the 30–day period, Puricelli was given the option of taking a demotion to litigation adjuster, or to continue the plan and possibly face termination if her performance did not improve by the end of the period. Puricelli opted for the demotion, resulting in a $3,000 reduction in salary, and thereafter reported to Mark Romano. Romano evaluated Puricelli in September 1996 and rated her at a "3" (performance meets expectations). In light of the favorable recommendation, Romano recommended Puricelli for a "spot bonus". The bonus was approved by Romer, but before disbursement, Puricelli notified Romano in December 1996 that she had accepted a position with another insurance company.

### B. Plaintiff Hughes

Plaintiff Hughes was employed by Continental Insurance Company from 1977 to May 1995, and then by CNA until his alleged termination on November 8, 1996. After the takeover, Hughes initially occupied the position of litigation adjuster until he was allegedly demoted to liability bodily injury adjuster in July 1996. Hughes similarly claims that defendant orchestrated a campaign to remove older employees from the claims department, and that his alleged discharge and replacement by a younger employee was pretextual.

The events preceding Hughes' termination are more involved. From the time of the takeover until August 1996, Hughes reported to Puricelli, who at that time was a claims supervisor. During the summer of 1996, defendant reorganized the claims department to reflect its "aggressive new philosophy of cost-effective management." As a result of the restructuring, Hughes was transferred from the litigation unit to the represented unit. The transfer did not affect his title or pay. Hughes was thereafter evaluated by Romano in September 1996 and was given a rating of "4" (performance does not meet the minimum requirements). The basis for the low rating was Hughes' inability to learn defendant's new computer system as well as his "worst case scenario" approach to claims. No disciplinary action was taken. In October 1996, Hughes notified Romano that he planned to retire and accept an offer with another insurance company.

In support of its motion, defendant asserts that the circumstances underlying plaintiffs' claims are so factually distinct that the requirements of permissive joinder have not been satisfied and alternatively that a joint trial would cause undue prejudice and confusion. In opposition to defendant's severance motion, plaintiffs concede that the individual circumstances surrounding their respective claims vary, but they contend that both were subject to a similar pattern of discriminatory action by the defendant, thus bringing their claims within the purview of Rule 20(a).

### DISCUSSION

Rule 21 of the Fed.R.Civ.P. addresses the misjoinder of parties. The rule is silent with regard to the grounds for mis-

joinder, but it is well-settled that parties are misjoined when the preconditions of permissive joinder, set forth in Rule 20(a), have not been satisfied. *Glendora v. Malone,* 917 F.Supp. 224, 227 (S.D.N.Y.1996); *Fong v. Rego Park Nursing Home,* No. 95 Civ. 4445, 1996 WL 468660 (E.D.N.Y. Aug. 7, 1996). Pursuant to Rule 20(a), proper joinder of parties requires the satisfaction of two criteria: (1) the right to relief sought by all plaintiffs must arise out of the same transaction or occurrence, or series of transactions or occurrences; and (2) a common question of law or fact as to all plaintiffs must arise in the action. Fed.R.Civ.P. 20(a); *Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1421 (S.D.N.Y.1989). A determination on the question of joinder of parties lies within the discretion of the district court. *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir.1974) (citing 7 C. Wright, *Federal Practice and Procedure,* § 1653 at 270 (1972)).

■ The well-established policy underlying permissive joinder is to promote trial convenience and expedite the resolution of lawsuits. *Blesedell,* 708 F.Supp. at 1421. The Supreme Court has recognized this policy, stating that "the impulse [under the Rule] is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1966). As such, severance is appropriate only where the prerequisites of permissive joinder have not been satisfied. *Glendora,* 917 F.Supp. at 227.

### A. Same Transaction or Occurrence

■ Courts have generally adopted a case-by-case approach in determining whether plaintiffs' claims constitute a "single transaction or occurrence" for purposes of Rule 20. *Mosley,* 497 F.2d. at 1333; *Blesedell,* 708 F.Supp. at 1412. In attempting to affix a definition to "transaction or occurrence," courts have found Fed.R.Civ.P. 13(a) to be particularly instructive, and have concluded with reference to that Rule that the phrase encompasses "all logically related claims."

*Mosley,* 497 F.2d at 1333; *Blesedell,* 708 F.Supp. at 1421.

The presence of material dissimilarities between the substantive allegations of the joined plaintiffs does not automatically bring such claims outside the "same transaction or occurrence" language. *Fong,* 1996 WL 468660 at *1; *Blesedell,* 708 F.Supp. at 1421–22; *Hohlbein v. Heritage Mutual Ins. Co.,* 106 F.R.D. 73, 77 (E.D.Wis.1985). In *Fong,* three plaintiffs joined in a discrimination suit brought against their employer. The plaintiffs were terminated under different circumstances, at different times, and by two different named defendants, approximately one year apart. *Fong,* 1996 WL 468660 at *3. The court denied defendants' motion for misjoinder because the plaintiffs alleged "actions by Defendants which subjected them to intense scrutiny and strict punishment." *Id.* In *Blesedell,* three female employees sued their employer for sex discrimination and sexual harassment. *Blesedell,* 708 F.Supp. at 1410. Defendant's motion for severance was denied because all three plaintiffs alleged injury by the same general policy of permitting discrimination against women. *Id.* at 1422. In *Hohlbein,* a motion for severance was denied where four plaintiffs, although employed at different times and in different positions, alleged a continuing pattern and practice with respect to defendant's employment of unrelated individuals. *Hohlbein,* 106 F.R.D. at 77.

In support of its motion, defendant contends that there is no logical relationship between plaintiffs' claims in light of the myriad differences which distinguish their respective claims. Plaintiffs, on the other hand, contend that their claims meet the "logically related" threshold given the similar pattern of discriminatory conduct to which they were both subjected. Both plaintiffs received poor or borderline performance evaluations, and the basis for those evaluations was the same; i.e., failure to meet the new and aggressive standards (albeit different ones) implemented by CNA after the takeover. Plaintiffs further assert that they both were demoted and replaced by younger employees. In short, plaintiffs claim that they were both "subjected to a similar method of removal from their

pre-takeover positions through performance evaluations, performed by ... Mr. Romer, during the same time period, and left the employ of CNA within one month of each other."

Plaintiffs have satisfied the "same transaction or occurrence" prong of the Rule 20(a) analysis. Despite the differences in the factual underpinnings of their respective claims, plaintiffs have alleged a pattern of conduct, commencing after the takeover of Continental, which discriminated against them on the basis of age. Both plaintiffs similarly allege that the basis for the adverse employment decisions was their failure to meet the demands of defendant's new and aggressive management style.

### B. Common Question of Law or Fact

■ The second requirement of Rule 20(a) is that the action raises a question of law or fact common to all the parties. The Rule does not require the commonality of all questions of law and fact raised in the dispute, rather, the requirement is satisfied if there is any question of law or fact common to all parties. *Blesedell,* 708 F.Supp. at 1422.

■ Plaintiffs have also satisfied the "common question of law or fact" prong of the Rule 20(a) analysis. Many of the same factors set forth above support a finding of commonality here as well. Initially, both plaintiffs have alleged claims under the ADEA, the New York State Human Rights Law, and intentional infliction of emotional distress. In addition, both plaintiffs allege actions, occurring after the takeover, that were selectively applied to them on the basis of age. Both plaintiffs also implicate Kevin Romer as a key player in the employment decisions set forth in the complaint.

### C. Separate Trials under Fed.R.Civ.P. 42(b)

■ In the alternative, defendant asks this court to grant its motion pursuant to Fed. R.Civ.P. 42(b) for separate trials on the ground that a joint trial will cause prejudice to the defendant and lead to confusion. Pursuant to Rule 42(b), the court may order separate trials of any claims or issues in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. *Amato v. Saratoga Springs,* 170 F.3d 311, 316 (2d Cir. 1999); *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 370 (2d Cir.1988).

■ Defendant contends that both confusion and prejudice warrant an order of separate trials. *Grayson v. K–Mart Corp.,* 849 F.Supp. 785 (N.D.Ga.1994); *Accord Henderson v. AT & T,* 918 F.Supp. 1059, 1063 (S.D.Texas 1996). According to defendant, confusion will result from the varying factual underpinnings of the plaintiffs' individual claims. In terms of prejudice, defendant asserts that although plaintiffs must each establish defendant's liability to them individually, a joint trial may bias the jury against defendant generally.

In support of its argument, defendant relies heavily upon *Grayson* and *Henderson.* A review of those cases instantly reveals, however, that the factors which motivated the courts to order separate trials are not present in the case at bar. In *Grayson,* eleven plaintiffs filed an age discrimination suit against their employer. *Grayson,* 849 F.Supp. at 791. A joint trial of plaintiffs' claims would have involved eleven different factual situations, eleven sets of work histories, eleven sets of witnesses and testimony, and the laws of four different states. *Id. Accord Henderson,* decided in the context of a Rule 21 motion, involved five plaintiffs asserting more than twenty different claims. *Accord Henderson,* 918 F.Supp. at 1061. Finding a joint trial in such a situation likely to be extraordinarily confusing, the court ordered severance of three of the plaintiffs' claims. *Id.* at 1064. It is also worthy of note that the *Accord Henderson* court permitted two of the plaintiffs to proceed jointly, despite differences in their claims, finding that the jury could easily keep the claims of two plaintiffs separate.

The case at bar stands in stark contrast to the factual situations before the *Grayson* and *Accord Henderson* courts. Here, there are two plaintiffs, and each plaintiff has alleged the very same claims; i.e., violations of the ADEA, the New York State Human Rights

Law, and intentional infliction of emotional distress. As such, the prejudice and confusion contemplated by the defendant is not sufficient to warrant separate trials. At the very least, any prejudice or confusion can be remedied by a carefully drafted jury instruction.

## CONCLUSION

On the basis of the foregoing, it is

**ORDERED** that defendant's motion under Fed.R.Civ.P. 20(a) and 21, and alternatively under Fed.R.Civ.P. 42(b), is denied and the plaintiffs shall be allowed to proceed jointly.

This court acknowledges with gratitude the assistance of Michelle L. Holmes, an Albany Law School extern, in the research and preparation of this Memorandum–Decision and Order.