Dante **DISPARTE**, Rodney Cobb, and Wali F. Muhammad, Plaintiffs,

v.

**CORPORATE EXECUTIVE BOARD**, Defendant.

No. CIV.A.03–01561 RBW.

United States District Court, District of Columbia.

Aug. 13, 2004.

Hassan A. Zavareei, Tycko Zavareei & Spiva LLP, Washington, DC, for Plaintiffs.

Jason C. Schwartz, Gibson, Dunn & Crutcher, LLP, Washington, DC, for Defendant.

### MEMORANDUM OPINION

WALTON, District Judge.

This matter is before the Court on the Defendant's Motion to Sever the Action Into Three Separate Actions pursuant to Federal Rules of Civil Procedure 20 and 21, the Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Sever the Action Into Three Separate Actions ("Pls.' Opp."), the Plaintiffs' Supplemental Memorandum of Points and Authorities in Opposition to Defendant's Motion to Sever the Action Into Three Separate Actions ("Pls.' Supp. Mem."), and the Defendant's Reply Memorandum in Support of Its Motion to Sever the Action Into Three Separate Actions ("Def.'s Reply"). Upon consideration of the parties' submissions, the Court concludes that the defendant's motion should be granted in part and denied in part.

### I. Background

On July 21, 2003, plaintiffs Dante Disparte ("Disparte"), Rodney Cobb ("Cobb"), and

Wali F. Muhammad ("Muhammad"), filed a complaint against the defendant alleging intentional discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and unlawful employment discrimination in violation of the District of Columbia Human Rights Act, D.C.Code Ann. § 2–1402.11. Complaint ("Compl.") ¶¶ 61–77.

Disparte began working for the defendant, the Corporate Executive Board ("CEB"), as an Administrative Assistant on August 21, 2000. *Id.* ¶ 9. Disparte was promoted to the position of Marketing Associate on February 15, 2001, and was again promoted to the Account Manager position of the Member Services Department ("MSD") of the Corporate Strategy Board on February 29, 2002. *Id.* ¶ 13–15.[1] Approximately two months later, Disparte was placed on a type of probation called "focus for performance" by Doug Haines ("Haines"), the Associate Director of the MSD. *Id.* ¶ 16. Seven weeks later, Haines wrote a "Summary of Focus Performance," which noted improvements in Disparte's performance but nonetheless "provide[d] the supposed basis for Disparte's [alleged] termination." *Id.* ¶¶ 17–18. Specifically, Disparte was accused of not being present at his desk, for using informal communication procedures, for only working regular work hours, and needing assistance to conduct member telephone calls. *Id.* ¶ 18. Disparte tried to "salvage" his job by meeting with managerial personnel and claiming that his race and not his performance was the basis for what he characterizes as his termination. *Id.* ¶ 25.[2] On the day prior to his departure, Disparte was placed in a job "where he was to perform menial work, with responsibilities less than those he was given two years earlier. . . ." *Id.* ¶ 27. As a result of this assignment, Disparte contends that he was "embarrassed and humiliated" and he

therefore obtained employment with another employer. *Id.* ¶ 28. Disparte was subsequently replaced by the defendant with a Caucasian. *Id.* ¶ 29.

Cobb began working for the defendant in October of 2000, as an Operations Associate in the Operations Department. *Id.* ¶ 32. Cobb was promoted in February 2001, to the position of Operations Coordinator at a branch office of the CEB located at 1875 K Street, N.W., Washington, D.C. *Id.* ¶ 33. At that time, Jessica Caceres ("Caceres") was the Operations Director and Lisa Herold was the Operations Manager. *Id.* ¶ 35. Cobb alleges that he was later reassigned to a lower level position and was denied a promotion. *Id.* ¶¶ 44–45.[3] As to the promotion denial, Cobb contends that the Information Processing Department did not want to employ members of the Operations Department, who were all African Americans, and that the position Cobb sought was given to a Caucasian woman. *Id.* ¶ 45. Eventually, Cobb's employment was terminated by the defendant. *Id.* ¶ 48.

Muhammad was hired by the defendant as an Operations Assistant in June of 1999. *Id.* ¶ 50. He was commended for his performance in this position by Ms. Caceres. *Id.* ¶¶ 51–53. In March 2002, Muhammad met with Caceres and Associate Director Kevin Goode ("Goode"), an African American, for his annual job performance review. *Id.* ¶ 56. During the review, Muhammad was told that he would receive a raise and a promotion. *Id.* Muhammad took the opportunity at that time to offer constructive criticism of Caceres' leadership skills. *Id.* As an analogy he used to illustrate Caceres' supervisory deficiency, Muhammad told a "story about a Queen who made rules for the peasants to follow, but never came into the kingdom to

---

1. Prior to Disparte's promotion to the Account Manager position, he was not interviewed by his future direct supervisors, Andrea Simkins, the Director of the MSD or Doug Haines, the Associate Director of the MSD. Compl. ¶ 14.

2. Notably, while attempting to meet with managerial personnel concerning his impending termination, Disparte received an email from Andrea Simkins commending his performance. *Id.* ¶ 26.

3. Matthew Castaldo, a Talent Management employee, "admitted that the requested termination of Mr. Cobb by Jo Ann Ruckel raised a red flag in light of Mr. Cobb's very strong performance reviews." Pls.' Supp. Mem. at 11. The papers submitted by both parties do not explicitly provide an explanation regarding the relationship between the Talent Management Department and CEB, but it appears that Talent's functions include personnel management.

see how the rules worked." Pls.' Supp. Mem. at 7 (citing the Deposition of Wali Muhammad ("Muhammad Dep.") at 6–11).[4] The next day, to Muhammad's surprise, his employment was terminated, allegedly because his job performance "only met expectations." Compl. ¶ 57. It was later discovered, however, that Goode found Muhammad's criticisms of Caceres threatening and was of the view that Muhammad should be terminated. Pls.' Supp. Mem. at 7–8. Goode discussed the matter with Jim Fenton, *id.* at 7, the Chief Administrative Officer at the CEB, a member of the CEB's Executive Committee, and the highest ranking leader of the Talent Management Department, *id.* at 3, 5, and it was decided that Muhammad's employment should be terminated. *Id.* at 7.

As further proof of their discrimination claims, the plaintiffs note that Fenton occupied all of the above positions when all three of the plaintiffs were terminated. *Id.* at 3–4. In June of 2001, Fenton had directed another Talent Management officer, Erin Morrisey–Lauer, to conduct a wholesale review of the management of the Operations Department, where plaintiffs Cobb and Muhammad worked at the time. Pls.' Supp. Mem. at 3–4 (internal citations omitted). A review of the Operations Department management in 2001 revealed that the department's staff of mostly African Americans identified racial issues as a problem within the department. *Id.* at 4.[5] After meeting with Caceres regarding the results of the review, Fenton and Morrisey–Lauer eventually hired Goode. *Id.* at 5. Goode allegedly told Cobb that "he was brought to the Corporate Executive Board as a Black man who would be responsible for firing Black people under the direction of the

White staff." Deposition of Rodney Cobb ("Cobb Depo.") at 327–328.

## II. Standard of Review

### A. Federal Rule of Civil Procedure 20(a)

■ "The well-established policy underlying permissive joinder is to promote trial convenience and expedite the resolution of lawsuits." *Puricelli v. CNA Insurance Co.,* 185 F.R.D. 139, 142 (N.D.N.Y.1999). Multiple claims are properly joined if they (1) "aris[e] out of the same transaction or occurrence, or series of transactions or occurrences and (2) if any question of law or fact common to all [the plaintiffs] will arise in the action." Fed.R.Civ.P. 20(a). In order to satisfy the first prong of this equation, the claims must be logically related. *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926). The logical relationship test is flexible because "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Consistent with this liberal standard, the Supreme Court later found that allegations of a "state-wide system designed to enforce the [voter] registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color" justified "the joinder of all the registrars [of the six counties] as defendants in a single suit ... [pursuant to] Rule 20(a) ..." *United States v. Mississippi,* 380 U.S. 128, 142, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965).[6]

---

4. The dates when the depositions were taken that are cited in the Plaintiffs' Supplemental Memorandum are not included. The deposition transcripts are compiled as Exhibit A and are in alphabetical order by the names of the witnesses.

5. The plaintiffs offer a "racially insensitive email" authored by Caceres and testimony that she "frequently yelled at her predominantly African American staff, told them to shut up, and treated them in a demeaning manner[,]" as support for their position that they were victims of discrimination. Pls.' Supp. Mem. at 4.

6. *See also Alexander v. Fulton County,* 207 F.3d 1303, 1324 (11th Cir.2000) (affirming joinder because "[p]laintiffs' claims stem from the same core allegation that they were subject to a systemic pattern or practice of race-based discrimination ... [and] seek relief based on the same series of discriminatory transactions by the same decision-maker in the same department during the same short time frame."); *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1331 (8th Cir.1974) (allowing joinder where ten plaintiffs alleged "a company wide policy purportedly designed to discriminate against blacks in employment" despite different injuries); *M.K. v. Tenet,* 216 F.R.D. 133, 142 (D.D.C.2002) (holding "alleged pattern

The second prong of Rule 20(a) requires only that there be some common question of law or fact as to all of the plaintiffs' claims, not that all legal and factual issues be common to all the plaintiffs. *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir.1974). Accordingly, where multiple plaintiffs bring suit for employment discrimination alleging a pattern of discriminatory behavior "a broad variation of circumstances relating to the merits of individual performance of each of the plaintiffs" will not nullify a common question of fact. *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1420–21 (4th Cir. 1991); *see Mosley*, 497 F.2d at 1334 (finding defendant's alleged racially discriminatory policy sufficient to show a common question of fact). *But see, Smith v. North American Rockwell Corp.*, 50 F.R.D. 515, 522–524 (N.D.Okla.1970) 50 F.R.D. at 524 (holding plaintiffs' allegations based on the same theories of law insufficient to show a common question because "[w]hether a defendant unlawfully discriminated against one plaintiff with respect to promotion or job assignment in a given department is not common with the question whether defendant unlawfully

discriminated against another plaintiff in a separate department.").

Moreover, the Court in *Alexander v. Fulton County*, 207 F.3d 1303, 1324 (11th Cir. 2000) found a "systemic pattern or practice of race-based discrimination ... by the same decision-maker in the same department during the same short time frame" amounted to a common question of fact although the plaintiffs alleged different injuries. *Id.* at 1324. However, the *Alexander* Court also identified circumstances which could cause prejudice and therefore justify severance, *e.g.*, "the alleged discrimination occur[ed] during different time period[s,] ... different supervisors ma[d]e the challenged decisions[,] ... or the alleged discrimination happen[ed] at geographically removed places." *Id.* Some of these same factors, among others, were determinative in *Smith*, 50 F.R.D. at 522–524.[7] Despite the plaintiffs' allegation of a company wide pattern of discriminatory behavior, a collective trial may require "an evaluation of the administration of varying company rules by different supervisory personnel in different departments all in the context of dissimilar job functions." *Id.* at 522. Therefore, in

---

of obstruction of counsel by the defendants against the plaintiffs is 'logically related' ... [and] establishes an overall pattern of policies and practices aimed at denying effective assistance of counsel to the plaintiffs."); *Ward v. Johns Hopkins Univ.*, 861 F.Supp. 367, 378–79 (D.Md.1994) (holding plaintiffs' allegation of a pattern of sexual harassment by defendant as the same transaction); *King v. Ralston Purina Co.*, 97 F.R.D. 477, 480 (W.D.N.C.1983) ("Common sense says that claims alleged to be part of a 'pattern and practice' satisfy both the 'transaction' and the 'common question' requisites of Rule 20(a)."). *But see Grayson v. K–Mart Corp.*, 849 F.Supp. 785, 791 (N.D.Ga.1994) (rejecting plaintiffs' arguments that the higher cost of separate trials and the loss of cumulative impact of separate trials were sufficient to merit joinder); *Henderson v. AT & T Corp.*, 918 F.Supp. 1059, 1063 (S.D.Tex.1996) (severing plaintiffs because "even assuming there is a pattern or practice of discrimination [by the defendant] it is clear that the Plaintiffs' claims in fact are highly individualized, involving particularized questions about each Plaintiff's work history and job performance."); *Martinez v. Safeway Stores, Inc.*, 66 F.R.D. 446, 449 (N.D.Cal.1975) (granting severance because "there is no showing that [one plaintiff's] claims are sufficiently analogous to the original plaintiffs to say that his right to relief arises from the same series of transactions as

their rights do."); *Moorhouse v. Boeing Co.*, 501 F.Supp. 390, 392 (E.D.Pa.1980) (affirming severance of plaintiffs who alleged a pattern of discriminatory practices because "there were ... substantial enough factual distinctions surrounding each plaintiff's lay off which made it impractical to try all the cases to the same jury."); *Smith v. North American Rockwell Corp.*, 50 F.R.D. 515, 522–23 (N.D.Okla.1970) (granting motion to sever where alleged denial of promotions were made by different supervisors in different work places and for different types of work); *Weir v. Litton Bionetics, Inc.*, 1986 WL 11608, *6 (D.Md. May 29, 1986) (granting motion to sever because the terminations occurred on different dates, occurred in different company divisions and the terminations were made by different decision makers; trying the claims together would be prejudicial to defendant and confuse the jury).

7. The *Smith* Court noted that "[i]t is of highest importance that the issue on the adjudication of each plaintiff's claim be clear." 50 F.R.D. at 523. In this regard, the Court identified certain questions that should be asked in an alleged discrimination case: "Who would be deposed as to the issue of allegedly discriminatory exercise of supervisory discretion? Who would be witnesses? What evidence would be heard? What would be the order of proof?" *Id.*

some circumstances, to avoid prejudicing the parties—either the plaintiff or the defendant—or confusing the jury, "there would inescapably be [the need for] as many separate lawsuits as parties plaintiff." *Id.* at 523; *see also Henderson v. AT & T,* 918 F.Supp. 1059, 1063 (S.D.Tex.1996) (severing three of five plaintiffs who alleged more than twenty different claims to avoid jury confusion). The Fourth Circuit, however, noted that even in situations involving "a broad variation of circumstances" carefully worded jury instructions which "point out [that] each plaintiff's claim should be considered separately and should rise or fall on the evidence with respect to that plaintiff" will mitigate the potential prejudicial impact of joinder and potential jury confusion. *Duke,* 928 F.2d at 1421.

### B. Federal Rule of Civil Procedure 21

■ Federal Rule of Civil Procedure 21 does not define the basis for misjoinder but states that "[m]isjoinder of parties is not grounds for dismissal of an action. Parties may be dropped or added by order of the Court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. Although the court must exercise its discretion in deciding whether to sever under Rule 21, "it is well-settled that parties are misjoined when the preconditions of permissive joinder set forth in Rule 20(a) have not been satisfied." *Puricelli,* 185 F.R.D. at 142 (citations omitted). "Once a claim has been severed, however, it proceeds as a discrete unit with its own final judgment, from which an appeal may be taken." 7 Wright & Miller *Federal Practice & Procedure* Civil § 1689 (2001).

### C. Federal Rules of Civil Procedure 42(b)

■ Federal Rule of Civil Procedure 42(b) provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order separate trial of any claim ... or of any number of claims." Fed.R.Civ.P. 42(b). "Separate trials usually will result in one judgment, but sev-

ered claims become entirely independent actions to be tried, and judgment thereon, independently." 9 Wright & Miller *Federal Practice & Procedure* Civil § 2387 (2001). "[A] trial judge may separate the claims in the interests of preserving constitutional rights, clarity, or judicial economy" when "both parties, using different triers of fact, could prevail on their respective claims without prejudicing the other party or arriving at inconsistent results[.]" *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil, More or Less in Rem,* 704 F.2d 1038, 1042 (8th Cir. 1983); *see also Amato v. City of Saratoga Springs, New York,* 170 F.3d 311, 316 (2nd Cir.1999) (explaining that "bifurcation [of the trial] may be appropriate where ... one party will be prejudiced by evidence presented against another party.") (internal citations omitted). In addition, there is " 'an important limitation on ordering a separate trial of issues under Rule 42(b): the issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice.' " *McDaniel v. Anheuser–Busch, Inc.,* 987 F.2d 298, 305 (5th Cir.1993) (quoting *Swofford v. B. & W., Inc.,* 336 F.2d 406, 415 (5th Cir.1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965)).

> The Court's determination as to whether it should sever the claims of the plaintiffs under Rule 21 or whether it should order separate trials under Rule 42 requires the same considerations .... (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common question of law or fact; (3) whether the settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Morris v. Northrop Grumman Corp.,* 37 F.Supp.2d 556, 580 (E.D.N.Y.1999).

### III. Analysis

■ The defendant alleges that "[e]ven a cursory examination of the facts as alleged in the Complaint reveals that these cases do not arise from the same transaction or occurrence, nor do they raise a common question of fact or law, both of which are mandatory

prerequisites for joinder under Rule 20." Memorandum of Points and Authorities in Support of Defendant's Motion to Sever the Action Into Three Separate Actions ("Def.'s Mem.") at 2. The defendant contends that "[t]he plaintiffs worked within different departments of the company (sometimes even at different locations), reported to different managers, and left the company at different times for different reasons." *Id.* Moreover, the defendant states that "[t]he facts and circumstances surrounding each plaintiff's employment, and the corresponding witnesses and documentary evidence, vary dramatically." *Id.* For example, the defendant points out that "the claims of Mr. Disparte bear no relation to those of Mr. Cobb or Muhammad." *Id.* Additionally, the defendant contends that "[t]he other two plaintiffs, Messrs. Cobb and Muhammad, have no connection whatsoever to the facts alleged by Mr. Disparte." *Id.* at 3.[8] The defendant further states that plaintiffs Cobb and Muhammad set forth "substantially different" claims because "they worked in different roles, for different supervisors, at different times, and often in different buildings." *Id.* Moreover, the defendant also alleges that "the employment actions about which they complain involved different decision-makers," and that "Mr. Cobb alleges that CEB failed to promote him on the basis of his race, a claim not raised by the other two plaintiffs." *Id.* at 4. The defendant therefore concludes that "as is evident from the face of the Complaint, CEB's decision to terminate [ ] Cobb and Muhammad, to deny a promotion to Mr. Cobb, and to offer [ ] Disparte an alternate position with the company, were individualized decisions made by different decision-makers at different times, and were based on the unique history, facts, and circumstances attending each plaintiff's employment situation [.]" *Id.* at 5. Thus, the defendant opines that "[t]he allegations do not arise from a common transaction or occurrence, nor do they present common questions of fact or law. Accordingly, under [the] Federal Rules of Civil Procedure 20 and 21, the claims of the three plaintiffs are misjoined and must be severed." *Id.*

Alternatively, the defendant argues that "[e]ven if the Court concludes that the plaintiffs are not improperly joined, the Court should nonetheless exercise its discretion pursuant to Federal Rule of Civil Procedure 21 to sever the action to avoid overly complicated discovery, unnecessary delay, jury confusion and prejudice to the defendant." *Id.* at 11. The defendant again alleges that "the plaintiffs' situations are each unique, involving particularized questions about each plaintiff's work history and job performance. Each plaintiff's case therefore relies on different documentary proof and on different casts of witnesses." *Id.* at 11–12. Moreover, the defendant contends that the plaintiffs have not shown the existence of a company wide pattern of discriminatory employment policies and practices or that these claims are part of such a pattern. Def.'s Reply at 7–8. In support of this contention, the defendant first points out that the plaintiffs withdrew their statistical expert because his findings did not reveal such a pattern. *Id.* at 3. Second, the defendant notes that although all of the plaintiffs maintain that denial of promotions was part of this pattern, only Cobb was denied a promotion.[9] *Id.* at 8.

---

8. Specifically, the defendant alleges that plaintiffs Cobb and Muhammad

> do not claim to have witnessed or participated in any of the events identified by Mr. Disparte, nor do they allege any interactions with Doug Haines, Andrea Simkins or any of the other seven witnesses identified in the paragraphs of the Complaint that relate to Mr. Disparte. Neither Mr. Cobb nor Muhammad worked in the Marketing of Member Services Departments, nor did they work in professional positions. They held different jobs, reported to different supervisors, and left the company at different times than Mr. Disparte. Furthermore, unlike Mr. Disparte, Messrs. Cobb and Muhammad did not resign from their positions; instead, the employment of both was terminated. The decision-makers to whom they attribute discriminatory motives differ from those about whom Mr. Disparte complains. Prior to their terminations, neither Mr. Cobb nor Muhammad was placed on a "focus" period.

Def.'s Mem. at 3 (internal citations omitted).

9. The defendant points out that Muhammad actually received a promotion one day before his termination from the Operations Department and that he "acknowledged he was unqualified" for the job he applied for in the Meetings Department. Def.'s Reply at 8. Moreover, the defendant notes that "Disparte identifies no pro-

Third, the defendant claims that the plaintiffs have not produced evidence to support the existence of a pattern of discriminatory practices by merely asserting that fewer African Americans are in positions of authority than Caucasians. *Id.* at 9. Finally, the defendant contends that the plaintiffs' allegation of a pattern of discriminatory practices conflicts with the record, which shows that African American employees replaced Cobb and Muhammad, Disparte was selected for a professional position, served in two professional departments and was promoted twice, and the defendant's statistics demonstrate promotions were not awarded according to race. *Id.* at 10

The defendant also argues that the plaintiffs each present unique and individualized claims, which if tried together would subject the defendant to prejudice. *Id.* Specifically, the defendant claims that because Disparte raises claims not connected to the claims of Cobb and Muhammad, Disparte's evidence of racial discrimination would cause incurable prejudice because his accusations would be imputed to Cobb's and Muhammad's superiors. *Id.* at 12. Likewise, the defendant submits that Cobb and Muhammad also present unrelated claims because the personnel who had input into Muhammad's termination were not involved in Cobb's termination. *Id.* at 12–13. The defendant also claims it will be prejudiced because each individual plaintiff will rely on the testimony of the other two to try to establish a "collective" pattern of discriminatory practices, such as, for example, the alleged conduct of Caceres and Fowler. *Id.* at 15, 18. According to the defendant, Fowler's statements do not pertain to the claims of Muhammad and Disparte, as they were not managed or terminated by him. *Id.* at 18. In addition, the defendant opines that Caceres' statements are only admissible in Muhammad's case because he was the only one of the three plaintiffs whom she supervised. *Id.* Therefore, the defendant concludes that any discriminatory comments by Caceres and Fowler would be prejudicial because "it would influence the jury's view of other company managers." *Id.*[10] Accordingly, the defendant concludes that severing or separating the cases for trial would alleviate the risk of prejudice. *Id.*

The plaintiffs, on the other hand, maintain that the claims of Disparte, Cobb, and Muhammad are properly joined under Rule 20(a) because all three claims are brought pursuant to 42 U.S.C. § 1981. Pls.' Supp. Mem. at 27. Cobb and Disparte also allege claims under the D.C. Human Rights Act. *Id.* Additionally, all three plaintiffs claim that they were "denied opportunities and promotions because of their race, and were ultimately terminated because of their race." *Id.* The plaintiffs argue that the policy in favor of joinder would not be served if these plaintiffs' claims are severed as there are common issues, witnesses, and lawyers concerning all three of the plaintiffs claims. Pls.' Opp. at 3. Moreover, the plaintiffs proclaim that the parties would be forced to engage in duplicative discovery in the form of witness depositions, expert testimony and separate motions. *Id.* The plaintiffs' further allege that the defendant perpetuated a company wide pattern of discriminatory policies and practices and the relevant facts of this pattern are common to all three plaintiffs. Pls.' Supp. Mem. at 23. On this point, the plaintiffs contend that Disparte's claims are factually connected to Cobb's and Muhammad's because some of the same witnesses would have to testify about each of the plaintiffs' claims. *Id.* at 24–26.[11] Moreover, from

---

motional opportunity he sought and was denied. [Rather, h]e was promoted and served in several professional positions." *Id.* at 9.

10. The defendant also rejects the plaintiffs' assertion that the same evidence would be presented at three separate trials because the decision makers and motives relating to the termination of each plaintiff are different. Def.'s Reply at 19.

11. Specifically, (1) James Fenton, former Director of the CEB's human resources department, allegedly played a role in the discriminatory practices and termination of all three plaintiffs, (2) Ayoka Jack, a CEB human resources officer, allegedly played a role in the termination of Muhammad and Disparte and in the review of Jessica Caceres, who was the director of Cobb's and Muhammad's department, (3) Matt Castaldo was the CEB human resources employee who approved Cobb's and Disparte's terminations, and (4) Nikki Barnett, one of the two highest ranking African American employees at the CEB, has knowledge of

the plaintiffs' perspective, Muhammad's claims are factually connected to Cobb's because "they worked together [in the Operations Department], were supervised by the same managers, and complain of the same adverse treatment," along with having to call common witnesses to establish their claims. *Id.* at 27. Finally, the plaintiffs maintain that the defendant has not demonstrated that it will be prejudiced if these claims are pursued collectively. *Id.* at 28–30. Rather, the plaintiffs argue that severance would force the Court to conduct three different trials with almost the same evidence. *Id.* And, the plaintiffs contend that even if there is a risk of prejudice, "this Court may prevent prejudice to [the d]efendant by providing [ ] carefully worded jury instruction[s]." *Id.*

For the following reasons, the Court concludes that plaintiffs Cobb and Muhammad are improperly joined with Disparte. While the three plaintiffs' claims are allegedly logically related to the allegation of a company wide pattern of discrimination at the CEB, Disparte worked in a different capacity, in a different department, under different supervisors and offers different evidence of racial discrimination than Cobb and Muhammad. *Moore v. New York Cotton Exchange,* 270 U.S. at 610, 46 S.Ct. 367; *Alexander,* 207 F.3d at 1324; *Mosley,* 497 F.2d at 1331. Allowing Disparte to pursue his claims in a joint trial with Cobb and Muhammad would prejudice the defendant because there is a significant likelihood that a single jury would be confused by the different items of evidence and the different witnesses' testimony. *Smith,* 50 F.R.D. at 523. Thus, different supervisors and job functions among the plaintiffs are factors recognized as potential sources of prejudice. *Alexander,* 207 F.3d at 1324; *Smith,* 50 F.R.D. at 523. Here, Disparte worked in a professional capacity as a Member Services Account Manager in the MSD and was supervised and his work performance was reviewed by Haines, Andrea Simkins and Casey Jones. Compl. ¶¶ 21–22. Disparte's evaluations were based on "focus for performance" standards and Ms. Simkins authorized Disparte's termination. Compl. ¶ 16. On the other hand, Cobb and Muham-

mad worked as support personnel in the Operations Department under the direct supervision of Lisa Herold and Caceras. Pls. Opp. at 11 The Operations Department did not use the "focus for performance" standards to evaluate its employees, but rated employees on a scale of one to four. Compl. ¶ 34. While Fenton authorized Muhammad's dismissal and played a prominent role in Cobb's termination, Disparte's only direct contact with Fenton was a letter requesting a meeting, which was referred to Mr. Castaldo. Pls.' Supp. Mem. at 7, 13. Under these circumstances, the Court finds that it is very probable that the supervisors called to testify in reference to Disparte's claims would have their testimony commingled with the supervisors called to testify in reference to Cobb's and Muhammad's claims, thereby subjecting the defendant to possible prejudice.

The Court also finds that the facts underlying Disparte's claims are so divergent from Cobb's and Muhammad's that there is a high probability that the defendant would encounter prejudice due to jury confusion. Here, unlike *Alexander,* 207 F.3d at 1324, the plaintiffs will offer different evidence of racial discrimination concerning Disparte, as compared to Cobb and Muhammad. Disparte's claims of racial discrimination are centered on the conduct of Ms. Simkins, alleging that she has a history of discriminating against African American employees and "treated Mr. Disparte coldly from the start." Pls.' Supp. Mem. at 11. Cobb and Muhammad both support their claims with the conduct of Caceres, Fowler and Goode, in the harsher treatment of African American employees in the Operations Department and the racially insensitive remarks of Ms. Ruckel to the Operations Department staff. *See generally* Pls.' Supp. Mem. at 7–12. These distinctions, in contrast to the evidence Disparte will produce, demands that his claims be severed from the claims of Cobb and Muhammad to avoid jury confusion and incurable prejudice to the defendant.

■ However, the defendant's motion with respect to Cobb and Muhammad is denied. The relevant legal authority requires the plaintiffs to allege, not prove, a pattern of

facts pertaining to Disparte's and Cobb's termi- nations. Pls.' Supp. Mem at 24–26.

discrimination to merit the proper joinder of parties. Cobb's and Muhammad's allegations are sufficient in this regard. *See United States v. Mississippi*, 380 U.S. at 142–44, 85 S.Ct. at 816 (denying severance because plaintiffs asserted an *allegation* of a statewide system of racial discrimination); *M.K. v. Tenet*, 216 F.R.D. at 142 (concluding that "the *alleged* repeated pattern of obstruction of counsel . . . is 'logically related' as 'a series of transactions or occurrences' that establishes an overall pattern of policies and practices . . . .") (emphasis added); *Puricelli*, 185 F.R.D. at 143 (denying severance because "plaintiffs have *alleged* a pattern of conduct . . . which discriminated against them on the basis of age.") (emphasis added). In addition to their common superiors and job functions, Cobb and Muhammad offer evidence in support of their assertion of a racially discriminatory policy in the department where Cobb and Muhammad were employed.[12] First, the two plaintiffs allege that the defendant's upper echelon was aware of, yet failed to act swiftly and effectively in response to racial issues in the Operations Department. Pls.' Supp. Mem. at 4–6. Second, the plaintiffs offer testimony from Mr. Goode that the defendant promoted a discriminatory policy by instructing him to alter performance reviews of employees in the Operations Department. *Id.* at 5–6. Third, Cobb and Muhammad offer evidence of the more lenient treatment of Caucasian employees as compared to the treatment of African American employees in the Operations Department. *Id.* at 8–9. Finally, the plaintiffs point to repeated racial remarks by several Caucasian managers in the Operations Department toward African Americans. *Id.* at 8–10. While the defendant cites to evidence that counters Cobb's and Muhammad's allegations, the Court concludes that Cobb and Muhammad sufficiently allege a pattern and practice of discriminatory behavior to satisfy both the transactional and the common question of fact tests to merit the presentation of their claims to a single jury. *Alexander*, 207 F.3d at 1323–24. Therefore, the alleged

company wide pattern of discrimination satisfies both prongs of Rule 20, making the joinder of Cobb and Muhammad proper. *United States v. Mississippi*, 380 U.S. at 142–44, 85 S.Ct. at 816; *Mosley*, 497 F.2d at 1331.

■ Notwithstanding the proper joinder of Cobb and Muhammad, the defendant also requests that this action should be severed pursuant to Federal Rule of Civil Procedure 21 to prevent prejudice and avoid jury confusion. Def.'s Reply at 5. The defendant also alternatively argues that since discovery is now complete, the Court may now separate the cases for trial pursuant to Federal Rule of Civil Procedure 42(b). *Id.* However, the Court denies the defendant's requests for severance pursuant to Rule 21 and separate trials pursuant to Rule 42(b). The minimal prejudice the defendant may sustain from the joint trial of Cobb and Muhammad does not outweigh the policy goals of permissive joinder, which "promote[s] trial convenience and expedite[s] the resolution of lawsuits." *Puricelli*, 185 F.R.D. at 142. The plaintiffs' claims arise out of the same alleged pattern of discriminatory practices and policies at the CEB and share common questions of fact. *Morris*, 37 F.Supp.2d at 580. In addition, the plaintiffs identified common supervisors, witnesses and events relevant to Cobb's and Muhammad's claims. Pls.' Supp. Mem. at 23–27. Equally important is the fact that judicial economy would suffer if their claims were severed or separate trials were ordered because Cobb and Muhammad will use some of the same evidence to show a pattern of discriminatory policies and practices. *Id.* at 30–31. Furthermore, unlike the plaintiffs in *Grayson*, 849 F.Supp. at 791, there is little possibility that the jury will be confused by the joint presentation of their claims, especially with properly crafted jury instructions. *Duke*, 928 F.2d at 1421.

## IV. *Conclusion*

For the reasons set forth above, this Court concludes that Defendant's Motion to Sever

---

12. After the initial filing of the defendant's motion to sever, discovery proceeded and revealed additional facts that would support plaintiffs' allegations of a company wide discriminatory policy. The Court does not conclude that this information affirmatively demonstrates a company wide discriminatory policy, but it does conclude that it weighs against severing Cobb's and Muhammad's claims or separating their cases for trial.

the Action Into Three Separate Actions is hereby granted in part and denied in part. Accordingly, the claims of plaintiff Disparte are severed from the claims of the other two plaintiffs. However, the claims of plaintiffs Cobb and Muhammad will not be severed.